KATHERINE SCHULTZ v. JOHN S. BOWER.[1]

February 6, 1896.

Nos. 9810—(267).

### Adjoining Landowners—Lateral Support—Damages.

The defendant made an excavation on his land, which caused the soil of the adjoining land of the plaintiff to fall into it. *Held*, following Schultz v. Bower, 57 Minn. 493, that the measure of the plaintiff's damages is not the depreciation of her land by reason of the existence of the excavation on the defendant's land, but the diminution of the value of the plaintiff's land by reason of the falling, caving, or washing of the soil of her land as the natural result of removing its lateral support.

### Same.

*Held*, further, that the trial court in this case correctly applied this rule in its rulings upon the admission of evidence and in its charge to the jury.

### Charge—Special Requests.

*Held*, following Davidson v. St. Paul, M. & M. R. Co., 34 Minn. 51, that it is not error to refuse to give instructions, though correct, at the request of a party, when they have been amply covered in the general charge, and that for this reason the special requests of the defendant in this case were properly refused or modified.

### Verdict Sustained.

Evidence considered, and *held* to sustain the verdict.

Appeal by defendant from an order of the district court for Hennepin county, Jamison, J., denying a motion for a new trial. Affirmed.

*Little & Nunn*, for appellant.

*M. C. Brady* and *John P. Rea*, for respondent.

START, C. J. This action is for the recovery of damages sustained by the plaintiff by reason of the defendant's removal of the lateral support of her soil from the adjacent land. The law of this case, including the measure of damages, was settled by the decision of this court on the former appeal of the case. Schultz v. Bower, 57 Minn. 493, 59 N. W. 631. Upon a new trial of the cause in the district court, the liability of the defendant was con-

[1] Reported in 66 N. W. 139.

ceded, but he insisted that the damages were only nominal. Only the question of damages was litigated, which were assessed by the jury in the sum of $450. The defendant appealed from an order denying his motion for a new trial.

1. The defendant's assignments of error Nos. 1 and 2 are to the effect that the court erred in overruling his objections to a question to the witness Goldsborough, and also one to the plaintiff, for the reason that neither question excluded any depreciation of the plaintiff's land by reason of the fact of the existence of the excavation on the defendant's land.

The question to Goldsborough was, "What would be the market value of this land at this time, if there had been no caving or washing or sloughing off of the soil into the pit of defendant's land?" It is plain upon the face of this question that it does not include any depreciation in the plaintiff's land by the mere fact of the existence of the excavation on the plaintiff's land. And, further, when the objection was made, the court in its ruling said, "Taking into consideration the fact that the pit was there, he may answer." This left no possible doubt as to the scope of the question, and the ruling was correct.

The question to the plaintiff was in these words: "Q. Now you may state, Mrs. Schultz, what the value of that land would be now, provided there wasn't any washing away or caving away of your land, as described here, into the pit dug on defendant's land? A. $2,000 per acre. Q. Well, what do you say is its market value in the condition it is now, taking into consideration the washing away and the state your land is in, with the excavation on defendant's land?" (Objected to as incompetent, irrelevant, and immaterial. Overruled. Exception.) "A. About $1,900 per acre." This question was technically objectionable, but it is manifest from the subsequent questions and answers to and by the plaintiff that she did not include in her estimate of the depreciation of her land any diminution in its value caused by the existence of the pit on the defendant's land except as it was the cause of the caving or washing of her own land; hence the ruling complained of was, at most, harmless error. These questions and answers are as follows: "Q. How much did you consider that that excavation depreciated the value of the property? A. Well, as long as it didn't interfere with my land— Q. Well, never mind, I am talking of the present time.

A. $100." Redirect examination: "Q. In answering that question, you may explain what you mean when you say the excavation depreciates the property; explain to the jury what you mean by that. A. From breaking down my land,—from my land breaking down." "Q. Dispossess your mind, Mrs. Schultz, of any depreciation in the value of your property that is caused or that is attributable directly to the excavation on the defendant's land; how much, then, would you say that your land was depreciated in value solely by the falling of this soil,—the loss of this soil? A. Well, the loss of the soil is $100 an acre. Q. That is, you mean to say, Mrs. Schultz, that by the falling of this little strip of soil it would depreciate the market value of your property just $100 an acre? A. Yes, sir."

2. The defendant's assignments of error 3 to 7, inclusive, relate to instructions given to the jury by the trial court, and to its refusal to give the defendant's third and fourth requests, and to the modification of his fifth request. These assignments are evidently based upon a misapprehension of the instructions actually given by the trial court, for the objection which the defendant's counsel makes to them is that they did not eliminate from the assessment of the damages to plaintiff's land the depreciation caused solely by the existence of the excavation on the defendant's land. The record answers the defendant's complaint.

We quote the here material portions of the charge of the court: "Where one, by digging in his own land, causes the adjoining land of another to fall, the actionable wrong is not the excavation, but the act of allowing the other land to fall. Hence, the measure of damages is the diminution in the value of the land by reason of the falling of the soil, and it is immaterial whether this falling be called 'caving' or 'washing,' provided it is the natural and proximate result of removing the lateral support. So, applying that rule in this case, you will determine what the value of the plaintiff's land was with the excavation there, before there had been any breaking off or caving of her land, and then you will determine the value of the plaintiff's land with the excavation there after the breaking off and caving of her land, and the difference between the two will be the measure of her damages." In reply to a question by a juror, the court further said to the jury: "You are to determine what the value of the property is in its present condition,

then you are to determine what is the value with the excavation there, without any caving or falling of the plaintiff's land, and the difference would be the measure of damages. [I think the jury understands. The plaintiff is entitled to recover for the act of the defendant in excavating, if the lateral support was removed and, as a consequence of the removal of the lateral support, her land was precipitated into the excavation.]" The part in brackets was excepted to by the defendant. The charge as to the plaintiff's damages, taken as a whole, was a concise and correct statement of the law as laid down by this court upon the former appeal.

The third and fourth requests of the defendant, which were refused, and the part omitted by the court in the fifth, were to the effect that in assessing the damages the jury should exclude any depreciation in the plaintiff's land caused solely by the existence of the excavation on the defendant's land. This proposition was included in the general charge of the court, and so much of the defendant's requests as he was entitled to have given were substantially given in language quite as clear as that of the requests. The trial court is not bound to repeat its instructions, or give requests, although they correctly state the law of the case, in their exact language. To do so, in many cases, would tend to confuse and mislead a jury, instead of helping them. It is not error to refuse a special request for instructions to the jury, if it has been substantially and fairly covered by the general charge of the court. Davidson v. St. Paul, M. & M. R. Co., 34 Minn. 51, 24 N. W. 324. The trial court did not err, either in its charge or refusal to charge.

3. The remaining assignments of error are to the effect that the verdict is not sustained by the evidence. The contention of the defendant is that, under the evidence, the plaintiff was entitled only to nominal damages. The evidence warranted the jury in giving substantial damages, and the verdict is not so manifestly against the weight of the evidence as to justify us in interfering with it.

Order affirmed.