AMELIA MORATZKY v. CARL WIRTH.

November 3, 1898.

Nos. 11,263—(88).

**Malpractice—Charge of Court—Weight of Expert Testimony When Conclusive—When Question for Jury.**

It is only in cases where the evidence, and the facts to be deduced therefrom, are undisputed, and the case concerns a matter of science or specialized art, or other matter of which a layman can have no knowledge, that a jury must accept the opinion of experts as conclusive. *Held*, accordingly, that it was not error in this case for the trial court to instruct the jury, in effect, that the weight to be attached to the expert testimony was a question for them, and that their conclusion as to any question of fact was to be based upon a consideration of the whole testimony, expert and nonexpert, and that they were not to surrender their conclusion so formed because the opinion of the experts did not coincide with such conclusion; that to do otherwise, and accept the opinions of the experts as to what had been proven by the evidence, would make them, and not the jury, the triors of the cause.

**Not Error to Refuse Special Requests Covered by General Charge.**

The trial court is not bound to repeat its instructions by giving special requests which are fully covered by the general charge. Rule followed, and *held* that it was not error for the court to refuse certain special requests.

**Evidence—Rulings of Court.**

Certain rulings of the trial court as to the admission of evidence considered, and *held* to have been correct.

**Verdict Sustained by Evidence.**

The verdict is sustained by the evidence.

Action in the district court for Ramsey county to recover $14,400 damages for alleged malpractice by defendant, a physician and

surgeon. The cause was tried before Bunn, J., and a jury, and a verdict for $1,800 was returned in favor of plaintiff. From the judgment entered on the verdict, defendant appealed. Affirmed.

*Humphrey Barton,* for appellant.

The instructions as to the weight of expert testimony are susceptible of no other construction than that the jury are not bound by expert testimony. That this is error, see Getchell v. Hill, 21 Minn. 464; Ewing v. Goode, 78 Fed. 442.

*Norman Fetter, James E. Trask* and *N. B. Ferguson,* for respondent.

As applied to the facts in this case, the court's instructions as to the weight of expert testimony were clearly correct. See Alabama v. Hill, 93 Ala. 514; Stone v. Chicago, 66 Mich. 76.

START, C. J.

This is an action against the defendant, a physician, for malpractice in treating the plaintiff, and this is the second appeal herein. 67 Minn. 46, 69 N. W. 480. A subsequent trial in the district court resulted in a verdict for the plaintiff in the sum of $1,800, and the defendant appealed from the judgment entered thereon.

It was substantially admitted on the trial that the plaintiff, a married woman, during the night of October 29, 1891, was delivered of a five-months old fœtus, and that the defendant was her attending physician from October 24 to November 18; that after the delivery, and on the following morning, the plaintiff removed the afterbirth. It is claimed on the part of the plaintiff that there was evidence on the trial tending to show, and that it was sufficient to justify the jury in finding, that the defendant negligently failed to remove a piece of the afterbirth, which putrified, whereby blood poisoning was produced, which caused the blood to clot, causing a plug either in a vein or artery of her left leg, whereby the blood was shut off, and the leg became gangrened, and was cut off to save her life. The defendant contended on the trial that, if he failed to remove all of the afterbirth, he was not negligent, but, if he was, such negligence was not the cause of the injury complained of.

1. The first error here urged by the defendant is that the court erred in instructing the jury that:

"The weight to be attached to the expert testimony is also a question for you to determine. If you reach a given conclusion from the consideration of the whole evidence, including as well the opinions of the experts as substantive facts deposed to by witnesses, whether experts or nonexperts, you are not to surrender your conclusion, which is your opinion on the whole evidence, because the opinions of the experts do not coincide with yours, but lead to a different result. To express the same thought in different language, you are not to substitute for your own views of what is established by the whole evidence—substantive and opinion, expert and nonexpert—the opinion of expert witnesses; for to thus surrender your own conclusions, and substitute instead the conclusions of witnesses as to what has been proved by the evidence, would be to make such witnesses, and not the jury at all, the triors of the cause."

The objections to these instructions by the defendant are that they, in effect, advise the jury that, if their opinion on any question upon which expert testimony was introduced did not agree with the opinion of the experts, they might disregard it, and follow their own opinion, and, further, that they were liable to mislead the jury. If counsel was of the opinion that the instructions were subject to the last objection, his remedy was to ask the court to make them more specific.

The instructions, however, are not fairly susceptible of the construction counsel seeks to give them. They were to the effect that the weight to be attached to expert testimony was a question for the jury, and that their conclusion as to any question of fact was to be based upon a consideration of the whole testimony, expert and nonexpert, and that they were not to surrender their conclusion so formed because the opinion of the experts did not coincide with such conclusion; that to do otherwise, and accept the opinion of the experts as to what had been proven by the evidence, would make them, and not the jury, the triors of the cause. The ordinary function of experts is to assist the jury, by their superior knowledge, in reaching a correct conclusion from the facts in testimony before them. Their opinions are not, as a rule, conclusive upon the jury, but mere items of evidence for the consideration of the jury. But in a case where the evidence, and the facts to be deduced therefrom, are undisputed, and the case concerns a matter of

science or specialized art or other matter, of which a layman can have no knowledge, the jury must base their conclusion upon the testimony of the experts. In such a case, it may be conceded that it would be error to give the instructions complained of.

Such, however, is not this case, wherein both the expert and substantive evidence was conflicting. One of the vital and sharply-contested questions in this case was whether the blood poisoning which caused the plugging of the artery in plaintiff's leg was due to the retention and decay of the afterbirth, or whether it existed before the plaintiff was delivered of the fœtus. If before, then the alleged negligence of the defendant, in not discovering and removing the afterbirth, was not the proximate cause of the loss of the plaintiff's leg. Upon this point there was expert evidence on both sides, which was conflicting, but it was practically conceded that the time when the plaintiff's leg first began to give her trouble and pain was an important factor in determining the question. The plaintiff and her witnesses fixed the date of the first pain and difficulty with her leg at about ten days after the birth. On the other hand, the defendant and his witnesses on the question testified that there was trouble with her leg at and before the time of his first visit to her, and that she then told him that it had pained her for weeks. Now, it is clear that, if the jury found the fact to be that the plaintiff did not have any trouble with or pain in her leg until after the birth, they would be justified in refusing to accept as conclusive any opinion as to the cause of the plaintiff's injury based in part upon the assumed fact that the trouble and pain in the leg existed prior to the birth. It was not error to give the instructions, in view of the evidence which the jury were to pass upon.

2. It was not error for the trial court to refuse to give the defendant's first, third, sixth, seventh, and eighth requests for instructions to the jury. All of them, except the third and seventh, were fully covered by the general charge, in language so clear and concise that the jury could not misunderstand them. The trial court is not bound to repeat its instructions by giving special requests which are fully and fairly covered by the general charge. Schultz v. Bower, 64 Minn. 123, 66 N. W. 139.

3. The third request was to the effect that, the plaintiff having

alleged in her complaint that the defendant was present at the birth of the child, the jury must consider it a conclusive fact in the case. We are at a loss, in view of the instruction given that it was immaterial whether the afterbirth was removed at the time the child was born or the next morning, to see how it was material whether or not the defendant was present at the precise time the plaintiff was delivered of the fœtus, or why the jury should treat it as a conclusive fact; but, if it was important to have them so told, they were not left in any doubt on the question, for the court expressly charged them that it was admitted that the defendant was present and assisted in removing the fœtus from the womb. It was not error to refuse the request.

The seventh request was in these words:

"That if the symptoms which developed or existed after the birth of the child were traceable to some other cause than the retention of something in the womb, then it was not the duty of the defendant to explore the womb to ascertain whether there was something remaining therein; and this is true, even though the defendant was mistaken in so tracing said symptoms in some other cause, if he used ordinary care and skill in so tracing the same."

This request, as a whole, is incorrect and misleading. The court could not say, as a matter of law, that if the symptoms could be traced to some cause other than the retention of something in the womb it was not the defendant's duty to make the exploration. It was his duty to exercise ordinary care and skill in the premises, and the jury were expressly told that if they were unable to find that the defendant, in the exercise of such care and skill, ought to have discovered and removed the piece of afterbirth, the verdict must be for the defendant. The request was properly refused.

4. Dr. Marquis was called and examined as a witness for the plaintiff as to facts, but not as an expert. The facts related to the condition in which he found her after the defendant's treatment of her and the treatment he gave her. On cross-examination he testified, strictly in response to questions by defendant's counsel which were not objected to, that the gangrene was produced by obstructed circulation, which was caused by a blood clot. He was then asked: "What produced the clot of blood?" This was ob-

jected to as not cross-examination, and the objection was sustained. This ruling is assigned as error. Clearly, it was not proper cross-examination, but the defendant claims that, because the plaintiff's counsel did not object to the questions calling for an opinion which led up to the one objected to, he waived his right to object to this one. There was nothing in the conduct of plaintiff's counsel to induce the defendant to enter upon this course of cross-examination, and he had a right to insist on his objection. If the defendant desired to avail himself of the opinions of the witness, he should have called him as his own witness. The ruling was correct.

Three other questions calling for the opinion of the same witness as an expert were severally objected to as not cross-examination, and the objections were sustained. The rulings were not error, for the reasons already indicated.

Dr. Marquis testified that he did not know whether the substance which he removed from plaintiff's womb was a piece of decaying afterbirth or a tumor. On his cross-examination, the witness was permitted, over plaintiff's objection that it was not proper cross-examination, to testify that the septic condition of the plaintiff might have occurred before or after the miscarriage; that she must have been in that condition for a long time,—several weeks. On his redirect he testified, without objection, that at the time he removed the substance he stated that it was a piece of the afterbirth; also that he remembered testifying in this case upon a former trial thereof. Thereupon the following questions were asked, rulings made, and answers given:

"Q. Wasn't your memory of the facts more accurate, probably, then than it is now? (Objected to as incompetent, irrelevant, and not redirect, and can have but one object at this time, and that is to impeach their own witness, which we object to. Objection overruled. Exception by defendant.) A. Yes; it might have been. Q. Now, I will ask you whether at that trial you didn't testify this: 'I couldn't see anything else except the fact of the piece of the afterbirth in the womb that would have produced the septicæmia. The afterbirth was the cause of the septicæmia for me. It was the natural way of becoming septic. There was nothing else but that.' (Objected to as incompetent, irrelevant, immaterial and not redirect examination. Can have but two purposes: First, for impeaching the witness; second, that it is just what the court has ruled this

witness is not here for at the present time,—an expert question. Objection overruled. Exception by defendant.) A. At the time I testified that, I didn't know as much about the case as I know now. Q. But you admit you did so testify, doctor? A. I did testify so at that time; yes, sir."

These rulings are assigned as error. The first question was simply a preliminary one. The second one did not call for an expert opinion. Its purpose was to refresh the doctor's recollection, and to show that on the former trial, when his memory of the facts was more distinct, he ascribed her septic condition to the piece of afterbirth in the womb. Of course, if it was due to this cause, it could not have existed before the miscarriage, as his opinion expressed on the cross-examination quite clearly indicated. In view of the cross-examination, it would seem that the plaintiff had the absolute right to call the witness' attention to his former testimony. In any event, it was a matter within the discretion of the trial court, and the court did not err.

5. Dr. Marquis having testified, without objection, in answer to a question as to the reasonable value of his services, and on cross-examination that he never made any charge for his services or rendered any bill for them, defendant moved to strike out this evidence as to the reasonable value of his services, on the ground "that, the witness not having charged anything for his services, the plaintiff cannot recover of the defendant for the value of the witness' services." The motion was denied, and the ruling is urged as error. It was not. The mere fact that the doctor had not then made a charge for his services, nor presented a bill for them, would not estop him from recovering the value thereof. If the motion had been based on the ground that the plaintiff's husband, and not she, was liable for the services, a more serious question would be presented. This point, however, was fully covered by the court's charge, to which there were no exceptions.

6. On rebuttal the plaintiff called Dr. Beal, who attended her shortly before the defendant took charge of her, and he was permitted, over the defendant's objection and exception, to testify that she made no complaints as to her leg. It is claimed that this was hearsay evidence, within the rule laid down in the case of

Williams v. Great Northern Ry. Co., 68 Minn. 55, 70 N. W. 860, and therefore reversible error. That case has no application to this one. The evidence was proper in rebuttal.. Some of the defendant's witnesses gave testimony tending to show that before the defendant was called the plaintiff was suffering severe pains in her leg; that it was swollen; and that she complained of it hurting her. The defendant testified that a similar condition existed when he first called. On the contrary, the plaintiff and her witnesses denied that she suffered any pain in her leg, or that there was anything the matter with it, until some ten days or two weeks after the defendant's first visit. Such being the state of the evidence, it was entirely competent to show, by her former medical adviser, that during the time he attended upon her, which covered the time during which it was claimed by the defendant's witnesses that there was trouble with her leg, and that she complained of severe pains in it and cried out because of it, she made no complaint as to her leg. It was an important item of evidence, to enable the jury to determine the weight to be given to the testimony of the respective witnesses; for, if the condition testified to by the defendant and his witnesses existed, the reasonable inference would be that she would certainly have complained to her attending physician as to her leg and the pain it caused her.

7. There are several other rulings of the trial court as to the admission of evidence which are assigned as error. We have considered all of them, and find no reversible error.

8. The last and most important question in this case is whether the verdict is sustained by the evidence. The plaintiff made a prima facie case before she rested, and, while it must be admitted that the defendant made a defense which might well have justified a verdict in his favor, yet whether, as claimed by his counsel, he fully explained away the plaintiff's case, was a question for the jury, and we cannot say that the verdict is not sustained by the evidence, without invading their function.

Judgment affirmed.