JOSEPH HEBERT v. INTERSTATE IRON COMPANY.[1]

February 17, 1905.

Nos. 14,220—(220).

**Negligence—Contributory Negligence—Requests to Charge.**

Personal injury action to recover damages sustained by the plaintiff by falling into an uncovered and unguarded ditch. *Held:*

1. The alleged negligence of the defendant and the contributory negligence of the plaintiff were made by the evidence questions of fact for the jury.

2. Requested instructions, though correct, need not be given to the jury by the court if they are fairly and substantially covered by the general charge. Certain requests by the defendant were rightly refused for this reason.

3. Where requests are argumentative or prolix, repeating in different language substantially the same propositions, thereby giving undue prominence and emphasis to the claims of the party making them, it is a fairer and better practice for the court to refuse them, and to give correctly and concisely in its general charge the propositions of law embraced in the requests.

Appeal by defendant from an order of the district court for St. Louis county, Dibell, J., denying a motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*Davis & Hollister,* for appellant.

*Alexander Marshall, J. De La Motte,* and *Warner E. Whipple,* for respondent.

START, C. J.

This is an appeal in a personal injury action from the order of the district court of the county of St. Louis denying the defendant's motion for judgment notwithstanding a verdict for $3,500 in favor of the plaintiff, or for a new trial.

The evidence given on the trial was conflicting upon several material matters. There was, however, no substantial controversy as to the following facts: The defendant operated an iron mine located approximately a mile and a quarter northeast of the city of Virginia.

[1] Reported in 102 N. W. 451.

The shaft of its mine and the power house are opposite each other, and one hundred ninety five feet apart. Southeasterly from the shaft, and two hundred fifty feet therefrom, is its dryhouse, wherein the miners, on coming out of the mine, change their clothing; leaving their working clothes to be cleaned and dried. There were two railway side tracks running between the shaft and the power house, laid upon an embankment raised some five feet above the surface of the ground. Its nearest rail to the shaft was four feet, and from the center of the shaft to the center of the track furthest away was twenty seven feet. On November 27, 1901, the defendant commenced the construction of a ditch from the power house to the shaft for the purpose of laying therein water and steam pipes, and completed the ditch about December 15 following. The ditch through the railway embankment was some seven feet deep, and from four to five feet wide, and from the embankment to the power house it was two feet wide and deep. There were employed by the defendant in and about the mine some fifty men, about half of them miners. The plaintiff was a man fifty years old, a common laborer, who was accustomed for some years to chop in the woods and work around iron mines. He entered the employment of the defendant November 23, 1901, as a dryman; that is, he was one of two men who had charge of the dryhouse and the miners' clothing; one being on duty during the day, and the other at night. The plaintiff's hours of service when on duty were approximately from six o'clock in the evening until seven o'clock in the morning. He was in charge of the dryhouse at night for some five days next before he was injured. Twenty-seven days after he entered the defendant's service, and on the morning of December 20, at about 5.30 o'clock, he left the dryhouse to go to his boarding house, in Virginia. He walked to the railroad track, and then followed it until he came to the ditch, which was not covered at this point, and fell into it, whereby his leg was broken. There were no lights or barriers or anything to warn persons walking on the railroad track of the open ditch. The plaintiff had nothing to do with the construction of the ditch.

In addition to these conceded facts, the plaintiff testified that he had no previous knowledge of the existence of the ditch through the railway embankment. He admitted that he saw a ditch being dug near

the power house, and piles of dirt being thrown out on the sides thereof. No dirt was left on the railway·embankment. He admitted the route he followed on the morning of the accident was not the usual one taken by him, but he testified that his usual route had become slippery at one point by reason of ice. The morning was cold, and he pulled his cap down, and did not look up until he fell into the ditch.

There was evidence tending to show that miners and other employees at times followed the railway tracks past the shaft in going to and from their work. There was evidence on the part of the defendant tending to show that the mouth of the shaft and railway embankment and tracks were in plain view of the dryhouse, in and around which the plaintiff worked at times in the daytime, and that he must have known of the existence of the ditch and its condition before he fell into it, and, further, that the defendant had no knowledge that any of the employees who worked nights used the route taken by the plaintiff. There was no evidence tending to show that the defendant ever directed the route its employees should follow in going to and from their work. The negligence alleged in the complaint is, in effect, that the defendant failed to cover the ditch, or put out any lights or barriers or any other danger signal.

The defendant's assignments of error raise the questions: Was the defendant, upon the record, entitled to a directed verdict in its favor? If not, was it entitled to a new trial?

1. It is the claim of the defendant that it was entitled to a directed verdict for the reason that, as a matter of law, it was not guilty of any negligence, but the plaintiff was guilty of negligence contributing proximately to his injury.

The uncovered ditch across the railway embankment, without any barriers, lights, or other danger signals, was a dangerous pitfall to any one walking in the dark along the railway tracks in ignorance of its existence. The question whether the defendant was or was not negligent in leaving the ditch as it was left does not depend upon whether it, or any one representing it, had any actual notice or knowledge that its employees were accustomed to walk upon the embankment at the point where the plaintiff was injured. If the defendant knew, or might have known by the exercise of ordinary care, that any of its employees working at night were accustomed to use the

route taken by the plaintiff, or that they might reasonably be expected to do so, and that, if they did, they were liable to fall into the uncovered ditch, it would be negligence on the part of the defendant if it failed to use due care to guard against such an accident. Christianson v. Chicago, St. Paul, M. & O. Ry. Co., 67 Minn. 94, 69 N. W. 640. The trial court correctly submitted the questions of the defendant's negligence upon this hypothesis, for the evidence was sufficient to justify a finding by the jury to the effect that the defendant, in the exercise of ordinary care, should have anticipated that some of its employees,.including the plaintiff, might, in the dark, pass along the embankment and fall into the ditch if some warning of its existence were not given. Therefore the question as to the defendant's negligence was one of fact. The question of the plaintiff's contributory negligence was also one of fact. While the evidence tends quite forcibly to show that he must have known of the existence of the ditch, and, so knowing, might have avoided falling into it by the exercise of ordinary care, yet it is not conclusive. It follows that the defendant was not entitled to an instructed verdict.

2. The assignments of error as to the defendant's claim that it was, in any event, entitled to a new trial, relate to the refusal of the court to give certain instructions to the jury. While a party is entitled to have his request for instructions given which, in form and substance, correctly state the law applicable to the case, yet he is not entitled to have them given in the language used by him. It is sufficient if the court fully covers the requested instructions in its general charge. Where such requests are prolix, repeating in different language substantially the same propositions, and thereby giving undue prominence and emphasis to the claims of the party making them, it is the better and fairer practice for the court to give concisely in its general charge the propositions of law embraced in the requests. Schultz v. Bower, 64 Minn. 123, 66 N. W. 139. The defendant in this case made seventeen special requests for instructions. We are of the opinion, based upon a consideration of the general charge in connection with the requests refused, that the general charge fully and fairly covered so much of such requests as the defendant was entitled to have given. We discover no reversible error in the record.

Order affirmed.