John Martin and others vs. James J. Hill and others.

July 24, 1889.

Contract—Rescission for Fraud—Proof Requisite.—In an action to re-- scind a contract on the ground of false representations, no greater amount. of evidence is required to establish the facts than is required to establish similar facts in any other kind of action, and this court applies in the re-- view of the findings of fact in such an action the same rule as it applies. in other actions, to wit, the rule that the findings will be sustained where the evidence fairly leaves a question as to what the fact is.

Evidence considered and *held* to sustain the findings of fact.

Appeal by defendants from an order of the district court for Ramsey county, refusing a new trial after a trial before *Brill*, J., without a jury.

*Clark, Eller & How*, for appellants.

*J. D. Springer* and *Lusk & Bunn*, for respondents.

GILFILLAN, C. J. This is an action brought to rescind a contract by which the plaintiffs purchased from the defendants Hill and Browne certain shares in the capital stock of the defendant the Clyde Coal Company, a corporation formed for the purpose of mining coal in certain lands in the state of Iowa, to recover the money paid upon the purchase, and secure the delivery to plaintiffs of promissory notes executed by them for part of the purchase price. The ground upon which such rescission is sought is that, to induce them to make the purchase, the defendants Hill and Browne made to plaintiffs certain false representations as to material facts, relying upon which they

made the purchase; and that by reason of the falsity of such representations the stock was of less value than they had a right to believe and did believe it to be from such representations. Upon a trial by the court below without a jury, it found the facts and directed judgment in favor of the plaintiffs.

Assuming that the facts as to which, according to the findings, the false representations were made, were material and such as the plaintiffs, if they believed them, had a right to rely and act upon, there is really no question of law in the case. That one who, making a purchase, does not get by it substantially what, from the false representations of the vendor as to material facts, he had a right to believe, and does believe he is purchasing, may have a rescission of the contract of purchase, if he is guilty of no laches, is beyond question. It would be the grossest injustice to hold a party to a purchase, where, solely through the fault of the other party, he gets only what he did not intend to buy. And to this right of rescission it is not essential that the false representations were made with actual intent to defraud. The right is not based upon actual fraud, but on a material mistake of facts caused by the fault of the other party. And it is, in general, a fault in a party to negotiations for a contract to state positively as a fact, as though he knew it to be such, what he does not know to be the fact, where the other party has a right to believe he knows it to be a fact, and does not himself know and has not equal means of knowing what the fact is.

Nearly all that the appellants contend for is that the evidence does not sustain the findings of fact. And we are urged to determine the objections upon a rule of decision other than that which the court has, in general, always applied in the review of findings of fact by the court below. That rule has been to sustain such findings where the evidence fairly leaves a question as to what the fact is. And, following that rule, we never reverse a finding merely because we may think from the record there is a preponderance of evidence against the finding, so that the court below might well have found the other way.

The appellants urge that in an action for rescission of a contract, the allegations of the plaintiff should be sustained by more full, clear,

and convincing evidence than is required to establish ordinary issues, and that a mere preponderance in the evidence ought not to be held sufficient to establish the allegations. We are not aware of any rule requiring mistake of fact or fraud to be established in such a case by more evidence than is required to prove the same facts in other cases. In actions to reform written contracts on the ground of mistake, or to give to a written instrument an intent and effect not appearing by its terms, as where it is claimed that a deed absolute on its face was intended as a mortgage, a mere preponderance of evidence aside from that furnished by the contract itself will not suffice. The reason for which, as given in *Sloan* v. *Becker*, 34 Minn. 491, (26 N. W. Rep. 730,) is the strong presumption that the written instrument which the parties have deliberately executed expresses their intentions, and also the danger of permitting the contrary to be shown by parol. Here there is no claim to contradict the written contract by parol, nor to show that it is other than the parties actually agreed upon. The issues are as to matters entirely outside of the written contract, and as to which it furnishes no evidence.

The Clyde Coal Company had a capital stock of $300,000. Its property, which this stock represented, consisted of 1,560 acres of land lying in three parcels, supposed to be valuable coal lands, in the state of Iowa. The value of the land and consequently of the stock depended almost wholly upon the existence of available veins of coal in the land. It is upon the falsity of representations in respect of this, alleged to have been made by defendants to plaintiffs during the negotiations for the purchase by the latter of the stock, that the action is based. These representations are claimed to have been made in conversations of defendant Browne with plaintiffs; in a prospectus prepared by Browne and issued by the company, and accompanied by a map showing the location of drill-holes, the depth at each hole at which coal was found, and the thickness of the vein at each hole; and in a letter written by the defendant Hill to one of the purchasers. Much that was said in these conversations, and written in the prospectus and letter, amounted, as the court found, only to expressions of opinion by the defendants as to the existence of coal in the lands, and their belief and expectation in the value of

the property and the profitableness of mining the veins of coal found; and they were understood by plaintiffs to be only matters of opinion. Upon these, though they might turn out to be not well founded, no cause of action could be based. But the representations in regard to the drilling of the holes are found to have been as to matters of fact and not of opinion. As to the drilling the court finds the representations to have been that the holes had been drilled with great care, and that the reports of the drillers regarding said holes were accurate and could be relied upon, and that Browne represented that he had personal knowledge of the skill of the drillers and of the manner in which the drilling was done. There was evidence upon which the court might find these representations to have been made. The defendants exhibited to plaintiffs, in proof that there was profitable coal in the land, the map and reports of the drilling. The prospectus states, "The property consists of 1,560 acres of *proven* coal lands." "The lands were prospected as to coal value by diamond steam-drill and hand-drills, requiring three years and an expenditure of $20,000 before the tests were completed and selections made." The records of the drill-holes (see map) show the coal deposit to be of the best quality." The letter mentioned states, "Our examinations, which have been made with the greatest care and in the most thorough manner, have *demonstrated* that out of the 1,560 acres in the tract there is at least 1,300 acres of coal land." As the map and records of the drillings were the only evidence which defendants produced to the plaintiffs of the existence of coal, these expressions could be understood to refer to nothing else but the drillings as *proving* and *demonstrating* the existence of coal, and to be affirmations that they could be relied upon. There was evidence that Browne used similar expressions in his conversations with plaintiffs, and though it was not shown that he in express terms represented that he had personal knowledge of the skill of the drillers, that might have been understood by the plaintiffs from his representations as to the correctness of the boring, and that he had overseen and kept the run of it, and had been very careful and particular about it. The inferences to be drawn from the borings or drillings, assuming them to be correct, would probably be matters of opinion or judgment; but the repre-

sentations that they (as shown in the map) were accurate and could be relied upon, were as much to matters of fact as a representation that they had been made.

Two of the assignments of error are to the effect that the court erred in finding from the evidence that the plaintiffs did rely and had a right to rely on the representations so made to them. There is direct evidence sufficient to justify the court in finding the fact that plaintiffs believed the representations and were induced by their belief in them to enter into the purchase. Whether they had a right to rely and act upon them depended on their materiality to the subject of the negotiations. The court found as a fact: "The drilling of holes in lands, properly done, discloses the character of the different formations below the surface at the points where said holes were sunk, and the existence or absence of coal and the quality thereof if present, the thickness of the deposit, and the distance beneath the surface; and such tests are of great importance in determining the value of lands for coal-mining purposes." The evidence abundantly sustains this finding. The statement of defendants that they expended $20,000 and three years time in making the drillings, and that they referred to them as demonstrating the existence of valuable coal upon the land, would without other evidence be sufficient to prove as against them the importance and materiality of the borings in arriving at a conclusion as to the existence and the value of coal deposits.

As found by the court below, the defendant Hill had no personal knowledge of the lands. He relied on the reports of the drillings, and believed they were made with great care, and that they were accurate and reliable, and had no reason to believe otherwise, and made the representations in good faith and without intent to deceive. He appears to have made the representations relying upon those that had been made by Browne to him. The court also finds that Browne supposed the drillings were correctly made and the reports of them accurate, and he made the representations without intent to deceive save as indicated in the following finding of the court, to wit:

"One McBirney who was employed by said Browne to drill some of said holes, including hole No. 5, so called, upon a tract of said

land called Pilot Mound, and other holes in that vicinity, was not a skilful driller and did not do the drilling done by him carefully, but performed said work so·unskilfully that his reports did not disclose the facts. In said Pilot Mound tract, the drilling of said McBirney, reports of which were exhibited to plaintiffs as aforesaid and upon which they relied, purported to show that at said spot known as hole No. 5 there was a vein of coal four feet in thickness, whereas the fact was, and proper drilling would have disclosed, that said vein of coal did not exceed two feet in thickness, and said vein was much less valuable than the vein reported by said McBirney, and could be mined with much less profit; and on account thereof said land and said stock were much less valuable than if the facts had been as reported by said McBirney. Said Browne was present when said hole No. 5 was drilled, and knew that the drilling was not done with care."

The evidence was sufficient to sustain these several findings of fact, unless it be the finding that on account of the other facts so found, "said land and said stock were much less valuable than if the facts had been as reported by said McBirney." This involves the inquiry whether the tests upon which plaintiffs relied to sustain their allegation that the defendants' representations were materially untrue, were sufficient to justify the conclusion that the variance between the facts as plaintiffs had a right from the representations to believe them to be, and the facts as they actually were, would materially affect the value of the lands as coal lands. The tests consisted in drilling five holes to reach what the reports of McBirney's drillings indicated as a vein of coal at and in the vicinity of the hole designated by him as No. 5, and by sinking a shaft four feet by five, or three feet by five, along the side of that hole. Although as the evidence shows the veins of coal in the Iowa fields are irregular, in some places thicker, in others thinner, and sometimes unexpectedly giving out altogether, so that drillings are not absolutely infallible as showing the extent of a vein nor that it is of a given thickness throughout its whole extent, yet the evidence in the case strongly tends to show that when carefully made they are evidence of the existence or non-existence of veins of coal, and their thickness and character and depth below the surface, and, where there are enough of the holes,

of the extent of the veins. That they are evidence of the vein extending beyond the immediate vicinity of the holes drilled is clear from this: The Pilot Mound tract included some 900 acres. Upon it the defendants had drilled 18 holes. And this seems to have been regarded by them as enough to justify them in concluding that the whole was proved coal land, and as demonstrating, so far as this tract was concerned, that out of the 1,560 acres of which the 900 acre tract was a part there were at least 1,300 acres of coal land. There was evidence other than the subsequent drilling that justified the finding that McBirney, who drilled for defendants the holes on this tract, was not a skilful driller, and we think that when the subsequent investigation had proved a great variance between the vein on which was hole No. 5 as its character was indicated by his reports of the drillings, and as it was ascertained to be in fact, the court might infer that his reports of drilling in other parts of the field were also unreliable. As the evidence tends to show, his reports indicated that the vein at hole No. 5 was the most valuable on the whole 1,560 acres; the after investigation showed it to be nearly worthless. Drillings being the proof upon which purchasers of coal lands which have not been tested by mining or shafts rely as showing the existence, character, and probable extent of veins, it might be concluded from the evidence that the plaintiffs would not have purchased the stock had they known that tests would prove the showing on the map exhibited to them to be false as to the most valuable vein indicated by it; had they known that the man who made the drillings appearing on the map was not a skilful driller.

We have after considerable hesitation arrived at the conclusion that the evidence justified the finding "that said land and said stock were much less valuable than if the facts had been as reported by said McBirney." It is to be borne in mind that the evidence as to the variance between his reports and the fact is not for the purpose of assessing damages, but only for the purpose of ascertaining if the lands as coal lands were in fact so much less valuable than plaintiffs had a right to believe and did believe them to be from the representations made to them by defendants, that, had they known the truth, they would not have made the purchase. As a basis for as-

sessment of damages the difference in value must be shown so that it can be estimated in dollars and cents. In this case it is only necessary to show it so material as to justify·the conclusion that, had the purchasers known it, they would not have made the purchase.

Order affirmed.

NOTE. A motion for reargument of this case was denied October 3, 1889.