## RALPH MAROTTA v. DULUTH NEWS TRIBUNE COMPANY.[1]

November 10, 1911.

Nos. 17,309—(41).

**Newspaper contest — action for recovery of money.**

Defendant was the publisher of a newspaper, and in order to increase its circulation conducted a prize contest, and offered prizes for the largest number of subscriptions. During plaintiff's absence from the city of Duluth, his fourteen-year-old daughter was left in charge of his store, and during that time became a contestant for a prize. In order to increase the number of votes, she practised certain fraudulent schemes by sending in fictitious names and increasing the length of time of subscriptions, and to secure the money for that purpose she appropriated cash from the safe of the plaintiff's store and paid it over to the defendant. In an action brought by the father to recover from the defendant the money thus paid, *held*, the evidence was sufficient to prove that plaintiff's money had been wrongfully taken by the daughter and paid over to the defendant, and the evidence was sufficient to make a case for the jury upon the question of its good faith in receiving the money.

Action in the district court for St. Louis county to recover $1,170 paid to defendant by plaintiff's daughter. The complaint, among

[1]Reported in 133 N. W. 89.

other matters alleged, charged that by the exercise of due care defendant could have learned that the money delivered to it by plaintiff's daughter was not obtained by her from subscriptions to defendant's newspaper, but was obtained by her in some unauthorized manner, and should have done so, and charged defendant with negligence and want of good faith in accepting the money without making reasonable efforts to ascertain from what source it was obtained. The answer, after detailing the method of conducting defendant's contest, alleged that all moneys received from plaintiff's daughter were received in the usual course of business in good faith, and defendant believed such money was delivered in payment of bona fide subscriptions to the newspaper under the rules of the contest, and defendant alleged it had no knowledge either actually or impliedly of any claim of right of plaintiff thereto. The reply was a denial of new matter in the answer. The case was tried before Ensign, J., who at the close of plaintiff's testimony granted defendant's motion to dismiss the action. From an order granting plaintiff's motion for a new trial, defendant appealed. Affirmed.

*Fryberger & Fulton,* for appellant.

*William Marx* and *Benjamin M. Goldberg,* for respondent.

LEWIS, J.

From the second day of August to the second day of October, 1909, defendant conducted a prize contest, whereby it offered certain prizes to those persons who would secure the largest number of subscriptions for its paper; the object being to increase and extend its subscription list. Any person wishing to enter the contest was required to cut from defendant's paper a blank nomination slip, cause same to be filled out, and have some third person sign his name thereto, thus nominating the party desiring to engage in the contest. The contestant was furnished with a receipt book, and was required to deliver to the defendant the subscriber's name, together with the cash for the subscription, and the contestant was credited with a certain number of votes in the contest. A three-months' subscription was entitled to five hundred votes, a subscription for one year to four thousand votes, and for five years to thirty thousand votes.

During the period mentioned the plaintiff was engaged in conducting a grocery business in the city of Duluth, and a few days prior to the second of August he had started on a trip to Europe, leaving the store in charge of his wife, who was assisted by his daughter Theresa, a girl fourteen years of age. Plaintiff did not return from Europe until after the contest had closed. He claims to have then discovered that the wife and daughter had delivered to the defendant from time to time the sum of $550 of his money, no part of which was obtained by them from subscribers to the paper, and that plaintiff's wife had appropriated $500 of his money, which had not been secured upon subscriptions, and had paid it over to the defendant, and that they had also secured $120 from an uncle and paid that over to defendant company.

The answer admitted receiving certain sums of money from the daughter, who was a contestant in the contest, but alleged that the defendant had conducted its business with her in good faith, believing that the names of the subscribers she furnished to the paper were secured in good faith, and that the money she paid in was money furnished by such subscribers.

The trial court dismissed the action at the close of plaintiff's case, upon the ground that the evidence was not sufficient to establish knowledge on the part of the defendant that the money had been misappropriated. Afterwards, upon plaintiff's motion, the court granted a new trial, and defendant appealed from the order, and takes the position here that the evidence was not sufficient to make a case for the jury upon the question of defendant's bad faith in receiving the money from the daughter.

The method followed by the daughter in conducting the contest was to engage her friends and acquaintances in securing subscriptions, and these with the money so received she delivered to the defendant at its office. On one occasion she returned three or four fictitious names, and took plaintiff's money from the safe, and represented it to be the amount paid in by subscribers. She was detected in this by the defendant, was admonished, and was not given credit for any votes for those subscriptions. She then resorted to the following method:

Having secured subscriptions for three months or a year, as the case might be, she raised the amount from three months to a year, and from one year to five years, and then appropriated plaintiff's money, and delivered it to the defendant under the misrepresentation that it represented the amount paid in by the subscribers. In this way, from time to time, she took $550 of her father's money out of the safe in the storeroom to which she had access.

The first prize offered by the defendant in this contest was a house and lot, advertised to be worth $3,000, the second prize was an automobile, third prize a piano, etc. Theresa started out to obtain votes enough to secure the house and lot, and resorted to the method stated for the purpose of swelling the votes. According to the testimony of herself and her mother, during the latter part of the contest she made known to her mother the fact that she had taken the money from the safe for that purpose, and thereupon, in order not to lose the money already misappropriated, the mother took $500 more, and the daughter paid it over to the defendant, and delivered the requisite amount of raised subscriptions. It appears, further, from the record, that at the time Theresa entered the contest she went to the office of the defendant and delivered to it the nomination blank which she had cut out of the paper, and, when asked if her father had written his name thereon, she stated that he had not, whereupon the man in charge tore up the blank and said that he would nominate her himself as a candidate. It also appears that from time to time during the contest a representative from defendant's office visited the store and encouraged her in every way to continue the contest, and held out flattering inducements that she would be successful in winning the first prize.

Defendant invokes the rule of law that, "when money transferred to an honest taker has been obtained through a felony by the one transferring it, the honest taker, who receives it without knowledge of the felony and in due course of business, acquires a good title as against the one from whom it was stolen," citing First National v. Gibert, 123 La. 846, 49 South. 593, 25 L.R.A.(N.S.) 631, 131 Am. St. 382; Spooner v. Holmes, 102 Mass. 503, 3 Am. Rep. 491;

Merchants v. Lamson, 90 Ill. App. 18; Murray v. Lardner, 2 Wall. 110, 17 L. ed. 857; Hamilton v. Vought, 34 N. J. L. 187.

The evidence tended to prove the following facts:

Theresa was a child only fourteen years of age, and in connection with her mother was in charge of her father's store. Defendant's representatives knew that the father was absent; that she had become greatly excited over the contest, and had resorted to a deception for the purpose of securing votes by sending in fictitious names; and that she secured the money from some source. Defendant could easily have ascertained whether the large number of subscriptions for one and five years, as returned by her, were genuine. The position of the defendant in conducting a contest of this character, which must necessarily appeal to the cupidity of the young, is quite different from the position of a business house in the commercial world with respect to commercial paper. In this state the rule is that, when a promissory note is shown to be fraudulent, the burden is upon the holder to prove that he is a bona fide holder without notice. Mendenhall v. Ulrich, 94 Minn. 100, 101 N. W. 1057; Drew v. Wheelihan, 75 Minn. 68, 77 N. W. 558. Plaintiff's case is much stronger. A prima facie case was proven that the money belonging to him had been appropriated without authority by the daughter and paid to the defendant for fictitious subscriptions. The circumstances under which the money was paid and received by the defendant were sufficient to establish the misappropriation, and the good faith and honesty of the defendant in receiving the money were questions for the jury.

Affirmed.