# J. D. DRAKE v. FAIRMONT DRAIN TILE & BRICK COMPANY.[1]

March 19, 1915.

Nos. 19,105—(292).

**Rescission of contract — false representation.**

1. In this action in equity to rescind a purchase of shares of defendant's stock, on the ground that plaintiff was induced to make the purchase in reliance upon false representations as to the quality of a clay bed owned by defendant and from which it was to procure the raw material for its business, the court found that false representations were made in respect thereto, but also found that before they were made defendant made some investigation as to the quality of the clay and that in making the representations it, in good faith, believed them to be true. It is *held* that the last mentioned finding is immaterial and does not justify a denial of rescission. A contract entered into under such circumstances is upon the same footing as if there had been a mutual mistake in respect to the subject matter, at least in an equity suit for rescission.

**Same — plaintiff not entitled to relief.**

2. The findings do not show that it would be inequitable to grant plaintiff relief.

**False representation not expression of mere opinion.**

3. Nor do the false representations found relate to the expression of a mere opinion upon which plaintiff was not entitled to place reliance.

[1] Reported in 151 N. W. 914.

---

Note.—On the question of rescission of subscription to stock for fraud and misrepresentation, see note in 33 L.R.A. 721.

**Election of remedy.**

4. Plaintiff had the option of seeking the equitable remedy or one at law.

Action in the district court for Martin county to rescind plaintiff's agreement to purchase defendant's stock and to recover $2,500. The answer denied that defendant sold its stock to plaintiff directly and alleged that the stock was sold to him by one Perry who was its agent. The case was tried before Quinn, J., who made findings and ordered judgment in favor of defendant. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Reversed with directions.

*Albert R. Allen,* for appellant.

*E. C. Dean* and *O'Brien, Young & Stone,* for respondent.

HOLT, J.

In this action to rescind the purchase of shares of stock in defendant corporation on the ground that its misrepresentations induced plaintiff to buy, the court, upon stipulated facts, directed judgment for defendant, and plaintiff appeals.

Prior to December, 1910, defendant acquired a tract of land at Fairmont, Minnesota, with the intention of erecting an extensive plant for the manufacture of vitrified drainage tiles from the clay deposit on the tract, which clay was supposed to be peculiarly adapted for such product. Subscriptions for shares of stock were obtained from plaintiff and others, and thereafter more than $100,000 was expended in the construction of the factory. But the clay upon defendant's land proved unsuitable, and could not be used, so that the clay needed for the factory had to be supplied from a distance. Plaintiff claimed that he had been induced to subscribe for the shares of stock by defendant's misrepresentation, in that it "falsely and fraudulently stated and represented to plaintiff that the defendant was the owner of certain lands and premises, to wit about 15 acres situated in the city of Fairmont, county of Martin and state of Minnesota, and that upon said lands * * * there were valuable and extensive bodies and deposits of good and valuable clay. That it was suitable and valuable for the manufacture of hard-burned and

vitrified drainage tiles; that it was in quality as good or better than any of the clays then or theretofore being used in the manufacture of drainage tiles at or near the city of Mason City in the county of Cerro Gordo and state of Iowa; and that said deposits of clay of said good and excellent quality existed in and upon said real estate to the defendant belonging in inexhaustible quantities; so that the same could not be exhausted in one hundred years of constant manufacturing." Appropriate averments of the falsity of the representations are found in the complaint. The findings bearing upon the question before us read:

"Fourth. That at and before the time when each of said plaintiffs so subscribed for said corporate stock, representations as to the character of the clay upon the tract of land so owned by the defendant, and its quality, fitness and suitableness for the manufacture of drainage tile and brick were made by the defendant to each of said plaintiffs as stated in said complaints, and that each of said plaintiffs believed said statements to be true and relied thereon in making their said several subscriptions, and were thereby induced to make the same. That prior to making said representations, said defendant had made some investigation of the character of said clay and in making said representations above referred to defendant in good faith believed them to be true.

"Fifth. That said representations were not true as made in material particulars; that the clay upon said tract is not first class clay for the purposes mentioned, and is not as good for such purposes as the Mason City clay; and that because of the poor and unsatisfactory character of the clay the defendant, after a few months trial thereof in its said plant, ceased to use the same and has procured clay for use in said plant from Blue Earth and other places, and is now using clay in said plant procured exclusively from other places than said tract of land so owned by the defendant, said clay being hauled for a distance of eighteen miles."

It is evident that the trial court denied relief because of the last sentence in the fourth stipulated finding. And we must determine whether one who has been induced by the innocent, but material, misrepresentations of another to enter a contract with the latter is

without remedy. When the one deceived asks for no more than to return what he got, and get back what he parted with in the deal it would seem, at first blush, that courts of justice, whether of law or equity, should be more favorably inclined to him than to the one who admits that he caused the deception, but offers the excuse that, when he was guilty thereof, he believed in good faith that he represented the facts truly. The real injury to the one deceived is not lessened in the slightest by the knowledge, motives or state of mind of the one who made the misrepresentations.

It is not necessary in this case to determine whether any distinction should obtain between an action in equity for a rescission of contract and one at law based upon a rescission by act of party after discovery of the misrepresentations, insofar as concerns the belief in the truth of the representations by the one who made them. In actions to recover damages for deceit, intent to deceive must exist and be proved. Humphrey v. Merriam, 32 Minn. 197, 20 N. W. 138; Bullitt v. Farrar, 42 Minn. 8, 43 N. W. 566, 6 L.R.A. 149, 18 Am. St. 485; Hedin v. Minneapolis Medical & Surgical Institute, 62 Minn. 146, 64 N. W. 158, 35 L.R.A. 417, 54 Am. St. 628.

Standard authors on legal subjects assert that in an action in equity to rescind, the claim of a defendant that he made the false representations believing, in good faith, that they were true, is of no avail. 2 Parsons, Contracts (9th ed.) *775: "If the statement be in fact false and be uttered for a fraudulent purpose, which is in fact accomplished, it has the whole effect of fraud in annulling the contract, although the person uttering the statement did not know it to be false, but believed it to be true." Warvelle, Vendors (2d ed.) § 846; Story, Equity Jurisprudence, § 193; Cooley, Torts (3d ed.) 949; Pomeroy, Equity Jurisprudence, (3d ed.) § 887. Many decisions announce the same doctrine. In Mohler v. Carder, 73 Iowa, 582, 35 N. W. 467, it is said: "Another equally well established rule is that, to entitle a party to relief in equity by reason of fraudulent representations, it is not necessary that it be shown that the party making the false statements knew that they were false when he made them. They may have been innocently made, yet, if represented as positive statement of facts, as distinguished from mere

opinions, and relied upon by the other party to his prejudice to the extent that he is led to act thereon, equity will afford relief." Maine v. Midland Invest. Co. 132 Iowa, 272, 109 N. W. 801, states: "And the case being in equity, it can make no difference in this immediate connection whether the representation as made was wittingly or unwittingly false and untrue. In such cases *scienter* is not of importance." See also Hubbard v. Weare, 79 Iowa, 678, 44 N. W. 915. In Penn Mut. Life Ins. Co. v. Trust Co. 19 C. C. A. 286, 318, 38 L.R.A. 33, 70, 37 U. S. App. 692, is found this statement: "Nearly all the cases upon which the petitioner relies are cases in equity of rescission or equitable estoppel in which bad faith is never indispensable as an element." Henderson v. Railroad Co. 17 Tex. 560, 67 Am. Dec. 675; Jesse French Piano & Organ Co. v. Nolan, 38 Tex. App. 395, 85 S. W. 821; Waters v. Mattingley, 1 Bibb. (Ky.) 244, 4 Am. Dec. 631; Smith v. Richards, 13 Pet. (U. S.) 26, 10 L. ed. 42; Foulks Accelerating Air Motor Co. v. Thies, 26 Nev. 158, 65 Pac. 373, 99 Am. St. 684; Frenzel v. Miller, 37 Ind. 1, 10 Am. Rep. 62. In Michigan *scienter* is immaterial both in actions at law for deceit and in equity. Holcomb v. Noble, 69 Mich. 396. An interesting article with citation of authorities is: Liability for Honest Misrepresentation, found in volume 24 of Harvard Law Review, page 415.

We think the question has been determined in this state by Martin v. Hill, 41 Minn. 337, 43 N. W. 337, an action to rescind the purchase of shares of stock because induced by false representations. Therein Chief Justice Gilfillan states: "That one who, making a purchase, does not get by it substantially what, from the false representations of the vendor as to material facts, he had a right to believe, and does believe he is purchasing, may have a rescission of the contract of purchase, if he is guilty of no laches, is beyond question. It would be the grossest injustice to hold a party to a purchase, where, solely through the fault of the other party, he gets only what he did not intend to buy. And to this right of rescission it is not essential that the false representations were made with actual intent to defraud. The right is not based upon actual fraud, but on a material mistake of facts caused by the fault of the other party." In that

case the court found that the representations were made under the belief that they were true. We held in Pennington v. Roberge, 122 Minn. 295, 142 N. W. 710, an action to rescind, that it was not necessary to prove the existence of a purpose to defraud. "The false representation having been made, it becomes immaterial, from a legal view, whether the defendant made it innocently or corruptly, if the plaintiff, relying thereon, was in fact misled to his injury. In either case it works a fraud on plaintiff."

It is also the settled law that mutual mistake is ground for rescission of a contract. Lindquist v. Gibbs, 122 Minn. 205, 142 N. W. 156. This is also recognized in Brooks v. Hamilton, 15 Minn. 10 (26), cited by defendant, but there the plaintiff was defeated by the rule of *caveat emptor.* And when false representations innocently made induce the making of a contract, should an attempt be made to distinguish the legal cause of the result from that to be drawn from a contract entered through mutual mistake? The party who relied on the representations which he afterwards ascertains to have been false, certainly acted upon a mistake as to facts when he entered the contract. And so did the one who innocently and in good faith made the representations. Both acted upon a supposed state of facts which did not exist. They were mutually mistaken upon the very same essentials of the contract. The mind of neither met upon an actual existing condition or state of facts.

The suggestion is made that defendant, upon the strength of the subscription and with the money paid by plaintiff, made large expenditures so that equity is now unable to place the parties *in statu quo,* and hence it would be inequitable to cancel the transaction and direct a return to plaintiff of the money paid for the stock. Upon the pleadings and findings we do not think an estoppel or other cause has been made out for denying plaintiff all relief.

Nor can we adopt the theory of defendant that the representations were merely expressions of an opinion concerning the quality of the clay. It cannot be assumed that the people invited to subscribe for stock in corporations of this kind possess that knowledge which the ones at the head of the corporation have in respect to the products to be manufactured and the quality of the materials re-

quired therein. So that the statement of an opinion as to the quality of the clay deposit on defendant's land may be a misrepresentation on which plaintiff had a right to rely, and which if false carries the same consequences as misrepresentations of facts. And further, we think the finding that the "representations were not true as made in material particulars" precludes the idea that the misrepresentations were not actionable.

We do not understand plaintiff to be limited to an action at law in this case. He had his choice of remedy. I. L. Corse & Co. v. Minnesota Grain Co. 94 Minn. 331, 102 N. W. 728.

In our opinion the findings of fact require a different conclusion of law. The judgment is reversed and the case remanded with directions to amend the conclusion of law to accord with the view herein expressed.

Judgment reversed.