# W. H. JACOBSON v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

January 28, 1916.

Nos. 19,576—(158).

**Jury — submission of special issues.**

1. The matter of submitting special issues to a jury in an action at law rests in the sound discretion of the trial court; and the discretion extends also to the form and substance of the special issues so submitted. There was no abuse of the discretion in this case.

**Settlement and release — rescission.**

2. A settlement and release of a cause of action, induced and procured by false representations of material facts, the falsity of which was unknown to the person making them, may be rescinded and avoided, though there was no fraudulent or other wrongful intent to deceive or defraud.

**Same — reliance on false representations.**

3. Plaintiff was injured while a passenger on one of defendant's trains; soon thereafter defendant's physician made a physical examination of plaintiff's person and, to induce or cause him to act thereon, represented that he had suffered no serious injury, had no broken bones, and would recover in the course of two or three weeks. It is *held* that the representations were material, plaintiff had the right to rely thereon in effecting a settlement with defendant, and since the representations were untrue in fact, though the falsity was not known to the physician at the time, and were not made with intent to deceive, plaintiff had the right to rescind the settlement. Such facts constitute fraud in law.

**Charge to jury.**

4. The instructions of the trial court upon the question of expert opinion evidence *held* not prejudicial to the rights of defendant.

[1] Reported in 156 N. W. 251.

Action in the district court for Blue Earth county to recover $25,000 for injury received by plaintiff while a passenger upon defendant's mixed or accommodation train and to cancel a certain release of defendant company from all claims by reason of such injuries upon the payment of $150. The case was tried before Comstock, J., and a jury which returned a verdict for $10,000. From an order denying its motion for a new trial, defendant company appealed. Affirmed.

*C. J. Laurisch* and *Webber & Lees,* for appellant.

*S. B. Wilson, J. W. Schmilt* and *H. L. Schmitt,* for respondent.

BROWN, C. J.

Action for personal injuries in which plaintiff had a verdict and defendant appealed from an order denying a new trial.

Plaintiff was a passenger upon one of defendant's accommodation trains running between Wells and Mankato. The train was wrecked and plaintiff was injured. The accident occurred on July 5, 1913, and plaintiff was removed to a hospital at Mankato, where he was given treatment by the defendant's local physician. On July 7, two days after the injury and when plaintiff was still at the hospital, a claim agent representing defendant called upon him and effected a settlement, paying to plaintiff in full for his injuries $150. Plaintiff signed and delivered the usual formal release. It was represented to him at the time of the settlement by the company physician, and also by the claim agent, that his injuries were not serious and that he would fully recover within three or four weeks. Within a few days thereafter plaintiff left the hospital and returned to his home at Mapleton, some 25 miles from Mankato. It appears that he was unable to walk unassisted and defendant's physician supplied him with a pair of crutches. He thereafter occasionally returned to Mankato for further treatment, but, not recovering as rapidly as represented by the physician, he applied, on August 4, to other physicians for relief. A thorough examination was made, an X-ray photograph taken of his back and hips, and the new physicians discovered what they termed an impacted fracture of the neck of the femur of the left leg; an injury to the sacro-iliac joint; a curvature of the spine, and a shortening of one of the legs. Thereupon he brought an action against the company to recover for his injuries, claiming that the settlement and release were

obtained by fraud. That action was transferred to the Federal court where, after trial, it was dismissed without prejudice, and thereupon plaintiff brought the present action, joining therein the engineer and conductor of the train as parties defendant. When the cause was called for trial defendant company conceded liability for the injuries sustained by plaintiff, but claimed that settlement therefor had been made, and the sole issue litigated, aside from the nature and character of the injuries and the question of damages, was whether the release was obtained by fraud. The action was dismissed as to the individual defendants.

The assignments of error challenge the ruling of the court in refusing to submit to the jury certain special questions in the language and form requested by defendant, and certain of its instructions and refusals to instruct the jury. We dispose of these in their order.

1. At the conclusion of the trial, counsel for defendant requested the court to submit to the jury certain special questions embodying the issue whether either the claim agent or the defendant's physician at the time of the settlement made any false and fraudulent statements as to the character of plaintiff's injuries with intent to deceive and defraud him, and, if such statements were found by the jury to have been made, to indicate what they were. The court refused to submit the question in the form presented, but did submit two distinct questions, embodying the substance of those presented by defendant, with the exception that the intent to deceive was eliminated, and the jury was not required to state what the false statements were. In point of substance the special question submitted called for the general conclusion whether any false and fraudulent statements were made to bring about the settlement. The contention is that, though it was discretionary with the court to submit or not submit special issues to the jury (Morrow v. St. Paul City Ry. Co. 74 Minn. 480, 77 N. W. 303), having decided to submit them, they should have been so framed as to require the jury to state in their answer the facts called for by the questions proposed by defendant. And that, since the questions in fact submitted called only for the general conclusions of the jury, there was an abuse of discretion entitling defendant to a new trial. In this we do not concur. As conceded by counsel the question whether special issues shall be submitted to a jury in a case of this kind rests wholly in the discretion of the court. The matter so resting with

the trial court, it necessarily follows that the form of the question or issue to be so submitted rests also in its discretion, in the exercise of which in this case we discover no substantial reason for serious criticism. 11 Enc. Pl. & Pr. 667. Decisions from courts of those states where by statute special issues are required to be submitted to the jury are not in point.

2. Defendant requested the court to charge the jury that fraud and intention to deceive were necessary ingredients of plaintiff's cause of action insofar as the validity of the release was concerned, and that unless the jury found that the statements made to plaintiff at the time of the settlement, by the physician and claim agent, as to the nature and character of plaintiff's injuries, were made with a knowledge of their falsity and with intent to deceive plaintiff, the release could not be set aside and plaintiff must fail in the action. The court refused to so instruct, and it may be conceded that the general charge did not include the element of intentional deception.

The physician of the company testified that soon after plaintiff was taken to the hospital he made a careful examination of his body with a view of determining the nature and character of his injuries, as a result of which he found no broken bones, and that the only injury suffered by plaintiff was in the form of bruises, from which he would soon recover. At the time of the accident plaintiff was seated in the accommodation coach of the train; this was derailed, and for some distance passed over the crossties, and violently bumped up and down until it came to a stop. Whatever injuries plaintiff received came from this violent bumping as the car passed over the ties. A fellow passenger received a dislocated ankle. The theory of plaintiff's case was that this violence resulted in an impacted fracture of the femur, and dislocation of the sacro-iliac joint. The company's physician did not discover either injury, if either existed, by his examination. He advised the claim agent that plaintiff had no serious injury, and plaintiff testified that he stated to him at the time he introduced the claim agent: "He told me I was just bruised a little, and that I would be well in ten days or two weeks * * *, and capable of going to work; that I did not have any broken bones, and that I had better go ahead and settle." The physician denied having advised plaintiff to go ahead and settle with the claim agent, though he admitted that he stated

to plaintiff that he had no broken bones, had been bruised only and would be well and able to go to work in two or three weeks. The same representations were made by the claim agent. Plaintiff further testified that in making the settlement he relied upon such statements and representations, and believed the same to be true, and the record will not justify the conclusion that he was chargeable with negligence in acting thereon.

Defendant's contention is that, to entitle plaintiff to rescind the release, it was incumbent upon him to show that he was induced to execute it by the intentional deception of the physician and claim agent, and that the court erred in not so charging the jury. We do not sustain the point. It may be conceded that an essential element of the old common-law action of deceit is intentional fraud and deception, and that as a general rule no recovery can be had in such an action where intentional deception does not appear. And there are many authorities holding to a strict application of the rule, and as requiring an affirmative showing of an intent to defraud and deceive in all cases where relief is sought on the ground of fraudulent representations. As thus strictly applied much injustice has resulted, and the courts have engrafted upon the rule modifications and qualifications, and the present trend of judicial opinion does not require in all cases a showing of an evil intent. The injury suffered by the defrauded party may be just as great, whether the fraud was intentional or unintentional. So in actions the result of which places the parties in *statu quo,* restoring to each what he parted with, equity will grant relief where the representations which induced and brought about the contract were in fact false, though made in good faith; the additional requirement being that the representations must appear to have been material, not mere opinion, and of a character to justify reliance thereon by the defrauded party. In such cases the courts grant relief either upon the ground of fraud in law, sometimes spoken of as constructive fraud, or mutual mistake. It is not material whether it be termed fraud in law or mistake; the result is the same in either case. The rule now often applied is tersely summed up by the Iowa supreme court in the statement that a "party cannot falsely assert a fact to be true and induce another to rely upon such statement to his prejudice, and thereafter hide behind a claim that he did not know it was false at the time he asserted it."

Haigh v. White Way Laundry Co. 164 Iowa, 143, 145 N. W. 473, 50 L.R.A.(N.S.) 1091. The rule has frequently been stated and applied in our former decisions both in actions for a rescission of the contract and where the alleged fraud has been presented as defensive matter. 1 Dunnell, Minn. Dig. § 3819; Drake v. Fairmont Drain, Tile & B. Co. 129 Minn. 145, 151 N. W. 914; Brooks v. Hamilton, 15 Minn. 10 (26); Hedin v. Minneapolis M. & S. Assn. 62 Minn. 146, 64 N. W. 158, 35 L.R.A. 417, 54 Am. St. 628; Busterud v. Farrington, 36 Minn. 320, 31 N. W. 360. It was held in Bullitt v. Farrar, 42 Minn. 8, 43 N. W. 566, 6 L.R.A. 149, 18 Am. St. 485, that it is a fraud for one to make an unqualified representation not knowing whether it is true or false, and that an unqualified statement amounts to an affirmation as of one's own knowledge. Numerous decisions in other states support the same doctrine. 14 Am. & Eng. Enc. (2d ed.) 94; Holcomb v. Noble, 69 Mich. 396, 37 N. W. 497; Johnson v. Gulick, 46 Neb. 817, 65 N. W. 883, 50 Am. St. 629; Pattison v. Seattle, R. & S. Ry. Co. 55 Wash. 625, 104 Pac. 825; Carroll v. United Railways Co. of St. Louis, 157 Mo. App. 247, 137 S. W. 303; Missouri, K. & T. Ry. Co. v. Maples (Tex. Civ. App.) 162 S. W. 426; Kathan v. Comstock, 140 Wis. 427, 122 N. W. 1044, 28 L.R.A.(N.S.) 201, and cases cited in note. In the case at bar the physician representing defendant made a physical examination of plaintiff a short time after the accident; upon the examination so made he represented to plaintiff the facts heretofore stated, which were repeated by the claim agent. The jury was fully justified in finding the representations were in fact untrue, though not intentionally so, and that they were made to induce a settlement of plaintiff's claim for damages. Plaintiff relied, and had the right to rely, upon the representations, and the jury properly found that he was induced thereby to make the settlement and sign the release. This brings the case within the rule of the authorities cited. The representations, aside from the statement that no bones were broken, were of matters of substance and not the mere opinion of the physician. Marple v. Minneapolis & St. L. R. Co. 115 Minn. 262, 132 N. W. 333, Ann. Cas. 1912D, 1082. The trial court was therefore not in error in refusing the requested instructions that an intention to deceive was an essential to plaintiff's right to recover, nor was there error in the refusal of the request to the effect that if the jury found that plaintiff suffered no broken bones he could not recover.

3. Defendant complains of certain of the instructions of the court relative to the expert opinion evidence. While the court unnecessarily extended its remarks upon this subject beyond what the character of the experts or nature of the case would seem to have justified, yet we find no sufficient reason for holding that defendant was substantially prejudiced thereby. The remarks of the court were general and applied with equal force to the medical experts called by both parties. The case would perhaps be different had defendant produced the only experts, and upon their opinions based its defense. Plaintiff's case rested largely upon the opinions of such experts and there was, as usually occurs in such a case, a square conflict in the opinions of those called by plaintiff and those called by defendant. And when the court said to the jury that they were not to accept the opinions of such witnesses, based upon an assumed state of facts, and not upon a direct knowledge of the facts, "unless it comports and agrees with your common sense and is consistent with the facts proven in the case, as such facts are determined by you from a fair preponderance of all of the evidence in the case," the court went no further in point of substance than did the charge of the court in Moratzky v. Wirth, 74 Minn. 146, 76 N. W. 1032, where the instructions were held not error. Plaintiff was injured at the time the train upon which he was a passenger was wrecked, and of this there is no controversy. The nature and character of those injuries presented the principal inquiry on the trial. The physicians called to treat him after he left the hospital and the care of defendant's physician thoroughly examined him a month or six weeks thereafter; took an X-ray of his hip and back, and discovered what they declared was an impacted fracture of the femur, a dislocation of the sacro-iliac joint, and a curvature of the spine. They produced the photograph at the trial and pointed out the fracture, and expressed the opinion that all the injuries resulted from the wreck. After quitting the hospital plaintiff returned to his home and was about his place doing such work as he was able to do but he did not recover, and there was at the trial no question but that he is now permanently crippled. The physicians called by defendant also examined plaintiff, and expressed the opinion that the injuries complained of were the result of disease, tubercular in character, and not the result of the wreck. They found no evidence of an impacted fracture of the femur, and were of opinion that if plaintiff

suffered such a fracture he could not have gone about his work on the farm; that it would have been impossible for him to do so. Plaintiff's experts did not agree to this, and expressed opinions to the contrary. Plaintiff had for some time prior to the accident suffered from some ailment in his left side, and an operation had been performed to locate the trouble, but the evidence tends to show that he had recovered from that operation before receiving the injury here complained of. During the time he was suffering from the trouble in his side, in walking about he favored the left leg, and to this defendant's physicians attributed the difficulty with his spine, now complained of, and which plaintiff's experts characterized as a curvature. The doctors were not agreed upon this question, defendant's physician described it as a crooked spine brought about by the act of plaintiff in favoring his left leg as just stated. But we need not pursue the subject. The testimony of the different physicians, those called by both parties, was opinion evidence in the main, and it was for the jury to accept that which satisfied them of the true situation as disclosed by the whole evidence in the case. This was in substance what the court said to the jury. And though the court in some respects went beyond what the case required, we conclude that there was no substantial prejudice to the rights of defendant.

4. The other assignments do not require extended mention. There was no unreasonable delay in repudiating the settlement, after discovery of the fraud, and the court properly refused to instruct as requested by defendant. If the present condition of plaintiff resulted from the injuries received at the time the train was wrecked, a question of fact, the amount awarded by the jury is within reasonable limits and not excessive. The evidence upon this as upon all other issues in the case, presented questions of fact and we discover no sufficient reason for disturbing the verdict.

Order affirmed.