ROBERT A. DWINNELL AND ANOTHER v. ROBERT C. OFTEDAHL AND ANOTHER.
BRUER LUMBER COMPANY, APPELLANT.[1]

January 11, 1952.

No. 35,552.

*O. A. Brecke,* for appellant.

*Mahoney, Morrison & Cragg,* for respondents.

[1]Reported in 51 N. W. (2d) 93.

LORING, CHIEF JUSTICE.

Plaintiffs brought an action to recover an alleged overpayment made to defendant Bruer Lumber Company (hereinafter referred to as the lumber company) on orders of defendant Robert C. Oftedahl. The action was one for money had and received. Oftedahl did not answer. At the close of the testimony, the court directed a verdict of $993 plus interest for plaintiffs. The lumber company appealed from an order denying its alternative motion for judgment or a new trial.

Plaintiffs purchased a lot at 2600 McNair Drive in the city of Robbinsdale, Minnesota, employed Oftedahl as a general contractor to construct a house for them on this property, and negotiated a mortgage loan of $8,000 from the David C. Bell Investment Company (hereinafter referred to as Bell). Bell retained the moneys in a fund and made disbursements from the fund on the orders of Oftedahl, which orders, it is conceded, Oftedahl had authority from plaintiffs to execute. Testimony in the record tends to prove conclusively that the authority of Oftedahl was limited to orders for disbursements to pay for services and material furnished for the construction of the house at this address.

All disbursements by Bell from the mortgage fund were on orders by Oftedahl, except for a balance of $393.08, which was returned to plaintiffs when construction was finished. There was one disbursement of $400 to Oftedahl himself on his own order.

The president of the lumber company testified that the total amount of goods delivered to plaintiffs' address was $1,878.24. The lumber company received two payments totaling $2,871.24 from Bell pursuant to orders signed by Oftedahl, one for $2,321.24 and the other for $550. Both orders had the name and address of plaintiffs on their faces. The reverse sides of the orders contained the following:

"The undersigned hereby acknowledges receipt of the amount stated within from the David C. Bell Investment Company in full payment of all labor and material, furnished to (or performed at) the within described property, and for value received hereby waives

all rights which may have been or which may hereafter be acquired by the undersigned to file mechanics' liens against said premises for labor, skill or material furnished to said premises.

"Bruer Lumber Co.

By S. N. Nielsen Sec'y"

Nielsen's authority to sign these instruments for the lumber company is not questioned.

The president of the lumber company testified that the transactions were carried in the account of Oftedahl and that the amount of the payments in excess of the value of material furnished to plaintiffs' address was credited to Oftedahl's account to pay for material furnished at other locations in which plaintiffs had no interest.

The directed verdict for $993 represented the difference between the payments made to the lumber company and the price of the material furnished by it to plaintiffs' address.

The lumber company's assignments of error present two questions for decision: (a) Did the evidence justify a directed verdict for plaintiffs? (b) Should the court have submitted the question of the lumber company's good faith to the jury?

■ The president of the lumber company in his testimony admitted the overpayments; but the contention is that, since Oftedahl owed the money, the lumber company was not unjustly enriched. This contention misses the gist of the action. If it was plaintiffs' money and if the payments were not made on an obligation of plaintiffs, and if plaintiffs are not estopped, the order must be affirmed. The general rule is well stated by Mr. Justice Mitchell in Sibley v. County of Pine, 31 Minn. 201, 203, 17 N. W. 337, 338:

"* * * The obligation * * * to repay * * * arises from the moral obligation, resting upon every person, natural or artificial, to make restitution where they have received without consideration the money of another, which they have no right to retain."

The money was plaintiffs'; they had executed a mortgage to Bell in exchange for the fund; and the balance remaining in the fund was

returned to plaintiffs.[2] It is not contended that the overpayments went toward any obligation of plaintiffs, so the only question is whether anything in the nature of estoppel prevents plaintiffs' recovery.

The lumber company cites Jefferson v. Church of St. Matthew, 41 Minn. 392, 43 N. W. 74, and Standard Oil Co. v. Day, 161 Minn. 281, 201 N. W. 410, 41 A. L. R. 1291. In those cases the money was paid to the contractors and by them to their creditors. The transactions in the instant case are different. Oftedahl never had either custody or possession of the funds. As an agent of plaintiffs, he had authority to sign orders for disbursements and nothing more. The only possible inference to be drawn from the evidence is that the lumber company knew that Oftedahl's authority was to draw on plaintiffs' fund only for material which went to plaintiffs' address to construct their house. Authority to sign orders for disbursements under the circumstances disclosed by the record did not constitute ownership of the fund. Bell, and only Bell, was plaintiffs' agent to disburse their funds; so when Bell issued checks to the lumber company they constituted payments by plaintiffs and not by Oftedahl.

■ The question of the lumber company's good faith is not material to the issue before the court. Restatement, Restitution, § 28, provides:

"A person who has paid money to another because of a mistake of fact and who does not obtain what he expected in return is entitled to restitution from the other if the mistake was induced:

"(a) by the fraud of the payee, or

"(b) *by his innocent and material misrepresentation,* or

*       *       *       *       *

"(d) by the fraud or material misrepresentation of a third person, provided that the payee has notice of the fraud or representa-

---

[2]The lumber company contends that there was no showing of damage to plaintiffs. Since the remaining balance belonged to plaintiffs, the overpayments were direct injury to them.

tion before he has given or promised something of value."[3] (Italics supplied.)

The rule of the Restatement is followed generally in this state. See, Martin v. Hill, 41 Minn. 337, 43 N. W. 337; Pennington v. Roberge, 122 Minn. 295, 142 N. W. 710; Drake v. Fairmont Drain Tile & Brick Co. 129 Minn. 145, 151 N. W. 914 (suits to rescind contracts); Jacobson v. C. M. & St. P. Ry. Co. 132 Minn. 181, 156 N. W. 251, L. R. A. 1916D, 144 (suit to rescind a settlement and release of a claim against a railway company for injuries); Cobb v. Cole, 44 Minn. 278, 46 N. W. 364; Cobb v. Cole, 51 Minn. 48, 52 N. W. 985 (overpayment to partner on dissolution of partnership)[4]; Farrell v. Burbank, 57 Minn. 395, 59 N. W. 485 (overpayment to employe); cf. Lund v. Davies, 47 Minn. 290, 50 N. W. 79; Benson v. U. S. Instalment Realty Co. 113 Minn. 346, 129 N. W. 594.

At this point, we need only repeat the statement on the back of the orders, which was signed by the lumber company:

"* * * payment of all labor and material, furnished to (or performed at) the within described property, * * *."

Intent in signing this statement is not important. If, by mistake, at the time it signed the orders and drew the funds in payment thereof, it received money that plaintiffs did not owe it, the lumber company was unjustly enriched. Regardless of intent on the part of the lumber company, plaintiffs were entitled to recover as for money had and received.[5]

Order affirmed.

[3]See, also, Restatement, Restitution, § 20, and *comment a;* § 15, *comment g,* illustration 11, p. 68; § 16, *comment d.*

[4]In the same case, Cobb v. Cole, 55 Minn. 235, 56 N. W. 828, this court held that, since there was no showing that too much was paid, judgment for defendant should be affirmed.

[5]The lumber company cites Marotta v. Duluth News Tribune Co. 116 Minn. 51, 133 N. W. 89. That case was not brought on the theory of unjust enrichment; nor could it have been, since the newspaper accepted the money in exchange for subscriptions for third persons and the contestant's chance to win a house. See, Mooney v. Daily News Co. 116 Minn. 212, 133 N. W. 573, 37 L.R.A.(N.S.) 183.