WALTER ALBITZ and Wife *vs.* MINNEAPOLIS & PACIFIC RAILWAY
COMPANY.

May 20, 1889.

**Fraudulent Representations—Rescission of Grant.**—Complaint, in an action to rescind a grant of right of way by plaintiff to defendant, on the ground that its execution was procured by fraudulent representations of defendant's agent, *held* good.

**Same—Representation of Intention.**—A representation that it was the then intention of defendant to do certain things (material to plaintiff) may, although a mere promise (afterwards unfulfilled) to do the things might not, be a basis for a charge of fraudulent representations.

**Same—Principal and Agent.**—The defendant, while insisting upon retaining the benefit of the contract, cannot deny the authority of its agent to make the representations by which he procured plaintiff to execute it.

Appeal by defendant from an order of the district court for Wright county, *Hicks,* J., presiding, overruling its demurrer to the complaint. The case made by the complaint was this: In March, 1886, the defendant proposed to build a line of railway from Minneapolis through Hennepin and Wright counties and beyond in a northwesterly direction, and had employed one Wendell as agent to procure the right of way. The defendant had caused, or represented that it had caused, the line on which it proposed to build to be surveyed, passing through the village of Rockford, in Wright county, thence northwesterly through the townships of Rockford and Buffalo and beyond. This line crossed a portion of plaintiffs' farm, which was traversed by a small creek. On March 26, 1886, Wendell procured plaintiffs to make to defendant, without any consideration, (the expressed consideration of one dollar having never been paid,) a sealed agreement to convey to it in fee "the right of way for a railway, 100 feet wide, over and above the following described land," (describing the plaintiffs' farm,) "said strip to be bounded by two parallel lines on either side and equidistant from the centre line of a railroad as the same is or may hereafter be located by said railroad company across said land." The contract was procured by Wendell by means of these false and fraudulent representations, relied on by plaintiffs: That the farmers (with one ex-

ception) on whose land the railway would pass from Lake Sarah in Hennepin county up to plaintiffs' farm had all given the right of way over their lands, and it was a public duty for plaintiffs to do the same; that all the owners (except a very few who had not been seen) of lands lying along the line of the railway between plaintiffs' farm and Buffalo had also given the right of way; that the railway was to be built on the surveyed line before mentioned, crossing plaintiffs' farm in such manner as to occupy the lower and less valuable part where the creek flows; that the company was to place a culvert over the creek in such manner that plaintiffs' cattle could pass back and forth under the same; and that the railway was to be built on the line running through the village of Rockford, and the station to be located and built at a described point, which would be easy of access to plaintiffs and the villagers. After alleging the falsity and fraudulent character of each representation, the complaint alleges that defendant built its railway on a new route and not on the alleged surveyed line, and so as not to pass over the creek at all; that the culvert was never built, and the new route passed over plaintiffs' most valuable land, increasing their damage by $200; that the railway as built did not pass through the village of Rockford, nor was the station located at the point mentioned, but at a point five miles distant from plaintiffs' farm, and not easy of access to them or to the villagers of Rockford. It is further alleged that plaintiffs are Germans but slightly acquainted with the English language, and that the contents of the contract were not fully or truly made known to them when they signed it; that defendant has taken for its right of way four and one-quarter acres of their land, for which it has never paid, and that the railway on their farm has damaged them in the sum of $800. The relief prayed is that the contract be set aside and declared void, and the plaintiffs' lands be freed from all incumbrances created by it.

*J. D. Springer, F. D. Larrabee,* and *Howard S. Abbott,* for appellant.

*F. H. Lindsley* and *Ferguson & Kneeland,* for respondents.

GILFILLAN, C. J. Although the allegations of the complaint are not in some particulars so precise and definite as the best style of

pleading would require, we think, on the whole, it contains enough to show a cause of action. The allegation that the plaintiffs are Germans, and only slightly acquainted with the English language, and that the contents of their contract, to rescind which, on the ground that its execution by them was procured by fraud, this action is brought, were not fully nor truly made known to them, amounts to nothing, for the reason that it is not stated what particulars were not made known to them, so that we can see whether they were ignorant of or misunderstood any particular that could be deemed material. Moreover, it was their business to know its contents before signing, and there is nothing to show such relations between them and defendant's agent as made it his duty to make them comprehend the contract, or that he did anything to divert their attention from the purport of the instrument. The representation that the defendant's road was to cross plaintiffs' land on a particular line, before that time surveyed, cannot be made the basis of a charge of fraud, for the contract expressly leaves it with defendant to follow that line or locate another. The representations as to where the defendant "was to" place a culvert across the creek running through plaintiffs' land, and how the culvert "was to be constructed" with reference to its use by them, and that the road "was to be built" on a line running through the village of Rockford, and that its depot "was to be located and built" at a designated place, if taken as mere promises or assurances that the defendant would do those things, would be insufficient, for fraud cannot be predicated of a mere promise, though it be afterwards unfulfilled. But if the agent in making those representations intended to create in plaintiffs the belief that it was, as a fact, the then intention of the defendant to do the things mentioned, and the representations might be understood and were understood by plaintiffs as asserting that fact, then a charge of fraud can be based upon the representations. The plaintiffs might very well have so understood them. That is their fair import. Other false representations set forth in the complaint, such, for instance, as to what had been done by other owners along the line, having no direct connection with the grant sought, while perhaps they might not be sufficient, standing alone, to establish fraud such as would call for a rescission of the

grant, might be proved as part of the *res gestæ,* to show the character of the transaction and the intent to defraud.

The defendant is not in position to deny the authority of its agent to make the representations. It cannot retain the benefits of the transaction, and repudiate the remainder. If it accepted and retained the contract, it must take it with whatever taint attached to its origin.

Order affirmed.