STATE OF MINNESOTA *vs.* J. B. TALL.

May 13, 1890.

**Criminal Trial—Refusal of Witness to Criminate Himself.**—*State v.* Thaden, *supra*, p. 253, followed, as to right of a witness to refuse to testify on the ground that his testimony might criminate himself.

**Same—Cross-Examination by Party of his own Witness.**— The court may, in its discretion, allow a party surprised by adverse or evasive testimony from his own witness to ask him whether he had not previously stated the facts contrary to his testimony, if the circumstances justify the belief that the witness is hostile and unwilling to tell the truth.

**Same—Evidence—Harmless Error.**—The formal receiving of newspapers in evidence, although unnecessary for the purposes of the case, *held* not to be prejudicial error, the same not having been read to the jury.

**Same—Variance as to Initial of Middle Name.**—The variance between an indictment and the proof, as to an initial standing for one of the Christian names of the person alleged to have been injured, Peter *J.* being used where it should have been Peter *C.*, is immaterial.

**Same—Privileged Communication to Attorney.**—Asking a witness on cross-examination whether he had ever communicated to his attorney a fact to which he had testified, is not a violation of the rules as to privileged communications.

**Same—Impeachment of Witness by his own Letter.**— A letter which a witness had previously written to another, and which might fairly be construed as expressing a purpose to testify to a fabricated state of facts, *held* receivable in evidence for the purpose of impeaching the witness, after he had testified to such facts.

v.43M—18

**Same—Motion to Strike Out held too Broad.**—A motion to strike out *all* the testimony of a witness, some of such testimony, at least, being not subject to the reason upon which the motion was based, *held* properly refused.

**Same—Forgery—Sufficiency of Evidence.**—Evidence *held* sufficient to justify a conviction for forgery.

**Same—New Trial—Newly-Discovered Evidence.**—On a trial for forgery, the state called as a witness the person whose name was alleged to have been forged. The defendant, by objections, opposed a full disclosure by the witness as to relevant facts bearing upon the question of the genuineness of his signature. The witness also claimed to be privileged from answering questions bearing upon that issue, which claim of privilege was in part allowed by the court. After conviction a new trial was sought, principally on the ground that the defendant desired the testimony of that witness upon that point; it appearing, also, that the latter proposed to waive his privilege. *Held*, that the motion for a new trial was properly refused, both because of the defendant's opposition to the testimony sought to be elicited from the witness on the trial, and because the court was justified, from the nature of the witness' testimony, in the conclusion that he was not an honest witness.

Appeal by defendant from an order of the district court for Ramsey county, *Kerr, J.*, presiding, refusing a new trial.

*Johns, Michael & Johns*, for appellant.

*M. E. Clapp*, Attorney General, and *M. D. Munn*, for the State.

DICKINSON, J. The defendant Tall was indicted with two others, Partello and Thaden, for forgery in the second degree. He had a separate trial. The offence set forth in the indictment consisted of the disposing and putting off, to one Christianson, of a forged mortgage note purporting to have been executed by one Christian P. Linstad, and payable to the order of one Herrick, the defendants knowing the same to be forged. The note was dated September 5, 1888. The offence is charged to have been committed on the 8th of March, 1889. The state called as a witness Linstad, whose name was subscribed to the note as the maker. He having refused to answer the question whether the signature was his, on the ground that to do so might tend to criminate himself, he was then asked when he first saw the note, and testified that he first saw it in the spring of 1889, and,

as he thought, in the month of March. He testified also to having seen an article published in the St. Paul Daily Globe (newspaper) in regard to the Christianson deal. He then refused to answer (upon the same claim of privilege) whether it was before or after he saw that article that he first saw or heard of this note. Being required by the court to answer, he responded that it was after he saw that article in the newspaper. Copies of that newspaper for the month of March were produced in court by the state, identified, and offered in evidence. The witness was shown an article in the issue of March 14th, but he testified that it was not the article referred to by him. The claim here made, that it was error to have compelled this witness to answer questions in respect to which he claimed his privilege, is not sustained. The reasons for this are fully stated in our decision in *State* v. *Thaden, supra,* p. 253, which was a separate trial of one of the joint defendants under this same indictment.

It was a proper matter of discretion for the court to allow the prosecuting attorney to ask this witness whether he had not on a former occasion made a statement to him contrary to the testimony of the witness, in a matter relating to the identity of the newspaper article referred to, and in this the court did not err. The testimony of the witness had been such as to justify the court in the opinion that he was an unwilling witness, hostile to the state; and in such a case we think it the better opinion that the court may allow questions of this kind to be asked, in the nature of a cross-examination, not for the purpose of discrediting the witness, but as a proper means of inducing him to tell the truth, when his conduct justifies the belief that he is disposed to conceal it. *Bullard* v. *Pearsall,* 53 N. Y. 230; *Melhuish* v. *Collier,* 15 Q. B. 878; 1 Greenl. Ev. § 444.

There was no prejudicial error in receiving the evidence relating to the newspaper article referred to by the witness. His testimony being that he never saw or heard of the note bearing his name as maker until after the publication referred to in his testimony, the date of that publication became material. The evidence was directed to showing that the alleged maker of the note knew nothing of it until after it had been put off upon Christianson. It is true that the contents of these newspapers were not material beyond what

might be necessary for the identification of the article referred to by the witness, and to prove the time of its publication. While it may be that it was unnecessary for this purpose to put in evidence all the papers published in the month of March, we do not understand that these papers, or any of them, were read to the jury, or even any article that had been published in them. If there was any error, it could not have prejudiced the case of the defendant, even though it be conceded, as claimed by the defendant, that this evidence failed to establish the fact to the proof of which it was directed.

The variance in respect to the name of Christianson, the person alleged to have been injured,—the indictment giving the name as Peter J., while the proof showed it to be Peter C.,—was immaterial. *Stewart* v. *Colter*, 31 Minn. 385, (18 N. W. Rep. 98;) *Miller* v. *People*, 39 Ill. 457.

The question asked of the defendant's witness Partello, as to whether he had communicated to his attorneys a fact to which he testified, was proper on cross-examination. Whether or not he could have been required to disclose a fact by being compelled to state what he had said to his attorneys, the reason of the rule relating to privileged communications is not applicable with respect to a fact which the witness testifies to directly. The privilege belongs to the client, and not to the attorney, and where the client testifies to the fact in question there can be no reason, in general, why he may not be required to testify as to whether he had communicated that fact to his attorney.

The letter of the defendant's witness Partello to Linstad (Exhibit K) was properly received in evidence. It was impeaching evidence against the witness of the strongest character, not because its contents were contradictory to his testimony, but because it embodied a detailed proposal by Partello to Linstad as to the evidence which should be presented in defence to this charge of forgery, and because this proposal or suggestion as to the defence to be made (and which was in substantial accord with the testimony of this witness) bears on its face the strongest marks of a mere fabrication of what should be testified to. The writer expressed the belief that it would be better to "stick to the same old defence," which he proceeds to

set forth, including what the *person addressed* had wanted, what he *knows,* what he told the writer in respect to signing the notes, and so on, concluding with a request for an answer, if this "suits you."

In the latter part of the trial, the defendant's counsel moved to strike out all the testimony of the witness Linstad, because, as it was said, it then appeared that the witness' claim of privilege had been well founded. It is sufficient to say of this that the privilege of the witness was personal to himself. He had given considerable testimony in the case without asserting his privilege, and the defendant was not entitled to have all this stricken out, even conceding that the witness might have been privileged from giving such testimony.

It is urged that the evidence of forgery was insufficient to justify a conviction for that offence. We deem it to have been sufficient. We will only here refer to some of the prominent features of the case. Tall and Partello were partners in real-estate business in St. Paul. The circumstances of the transaction connected with putting off this note and mortgage upon Christianson were such that there can be no doubt that it involved a conspiracy between Tall, Partello, and Thaden to defraud Christianson of certain real estate by securing a conveyance of it in exchange for worthless notes secured by a worthless mortgage. Partello, called as a witness for the defendant, testified as to the circumstances relating to the signing of the note, declaring that he signed Linstad's name by the authority of the latter, verbally given prior to the signing of the note. Without here setting forth particularly this testimony of Partello, we do not hesitate to say that it was so unreasonable, and the witness was so self-impeached, that the jury were unquestionably justified in finding that while the fact, thus shown on the part of the defendant, that Linstad did not sign the note, was true, yet that this account of a signing by Partello by Linstad's authority was a complete fabrication. Then there was the testimony of one Esklund, that, very soon after the note had been put off on Christianson, Tall, being in the company of Partello, said to the witness: "We used his [Linstad's] name up there, and want to tell him, so there wont be any kick about it; we used his name in that transaction,"—referring to the Christianson matter. The further circumstance that the note was dated as of a time long prior to

that when it was made, was worthy of some consideration in this connection. Tall's testimony in his own behalf, to the effect that he never saw the note until the Thaden trial, and in respect to other matters, which in view of other evidence in the case the jury were at liberty to reject as false, may have been justly deemed by the jury to weigh against him, and to strengthen the conclusion to be drawn from other evidence that he was guilty of the offence charged. Whether the evidence in the case when the state rested was sufficient to have supported a conviction need not be considered. Cole v. Curtis, 16 Minn. 161, (182.)

The application for a new trial was based in part on affidavits showing that the witness Linstad, subsequent to this trial, and on the trial of Partello, had waived his privilege, and had testified fully as to the execution of the notes, and to the effect that he had authorized Partello to sign his name to the notes. The affidavit of Linstad was also presented, in which he said he would waive his privilege, and that the fact was as above stated. Another affidavit set forth a conversation with Linstad prior to March, 1889, in which he stated that Partello had authority to sign his name in transacting business in reference to real estate which they were interested in. A counter-affidavit was also presented, setting forth statements made by Linstad contrary to what the defendant claims he would testify to. The court was justified in refusing to allow a new trial, so that Linstad's testimony might be more fully presented, for at least two reasons: *First*, because in the trial in this case, when Linstad was called as a witness by the state, and interrogated concerning the matter in question, the defendant, by his counsel, objected repeatedly to questions directed to eliciting the facts concerning the execution of the note. The court was fully justified by the case in believing that the defendant then knew what the facts were in that regard, and which the witness knew as a matter of course. Having objected to such testimony when it was offered on the trial, his application for another trial deserves not much favor, so far as it rests upon the desire to produce the testimony of Linstad upon this question. Again, apart from the affidavits presented on the part of the state, we think that the court was justified in believing from the testi-

mony of Linstad, as given in this case, that he was not an honest witness, whose testimony, if given as proposed, would be worthy of much credit.

Order affirmed.