JOANNE E. SWANSON v. LEONARD DOMNING AND OTHERS.

86 N. W. (2d) 716.

November 29, 1957—No. 37,159.

---

[2]Followed in Holste v. Baker, 223 Minn. 321, 26 N. W. (2d) 473. See, Ehmke v. Hill, 236 Minn. 60, 51 N. W. (2d) 811; 31 Minn. L. Rev. 497.

112

*Harry H. Peterson,* for appellant.

*Norman E. Biorn* and *Faricy, Moore & Costello,* for respondents Domning.

*Terence P. Brennan,* for respondents Home Finders.

KNUTSON, JUSTICE.

This is an appeal from an order of the trial court denying plaintiff's motion for a new trial.

Defendant H. R. Hoem, whose full name is Hannah R. Hoem, operates a real estate business under the trade name of Home Finders or Home Finders Rental Registry. Defendant Odean C. Lee is the son of Hannah R. Hoem and is employed by her in her real estate business.

Defendants Leonard Domning and Ruth Domning were the owners of a ten-acre tract of land in rural Ramsey County, in this state, which they had listed with Home Finders for sale.

Plaintiff owned an apartment house in north Minneapolis. Through an advertisement in a newspaper, she contacted Home Finders Rental Registry by telephone in the early part of October 1954 for the purpose of seeking its assistance in procuring a tenant for one of her apartments. As a result of this telephone conversation, Lee called on plaintiff for the purpose of discussing the matter with her. The apartment later was rented by plaintiff without the assistance of Lee, but the two became quite well acquainted as the result of this contact. Shortly after the first call, plaintiff, through the suggestions of Lee, became interested in purchasing the Domning property. Lee took her out to the property, and she looked it over. A dwelling house was located on the ten acres of land, and plaintiff went all through the house and over the land, but she claims that she did not get into the room which was supposed to be the bathroom; she admits that in other respects she did inspect the property. Originally the Domnings were asking $14,500 for the property. After some negotiations, plaintiff offered them, through Lee, $11,000. Later she added $300, which they demanded for installing a new septic tank.

Plaintiff claims that she was induced to purchase the property as the result of fraudulent misrepresentations of Lee. It is her claim

that he told her that the property was worth twice what she bought it for; that with a comparatively small amount of fixing the house and two acres could be sold for $17,000 and that he had a buyer who would pay that amount for it; that he was a painter and decorator by trade and had a crew of men ready to go to work on the house immediately so that it could be sold in the very near future and she would get her money back out of it with a substantial profit; that the land could be subdivided so that six to nine lots could be obtained from each acre of land and sold for $1,000 each; and that the house was equipped with water and a toilet. Plaintiff claims that she relied upon these representations, all of which were false. Plaintiff had some experience in buying real property, having purchased other property prior to the one here involved, but she claims that she relied upon Lee's superior knowledge concerning the matters which he represented to her.

The jury could find from the evidence that the entire property was worth considerably less than plaintiff paid for it and that the cost of subdividing and platting the property would more than offset any amount plaintiff received for it above the amount she paid. It is admitted that there was no toilet in the house at the time plaintiff purchased it, but defendants claim that plaintiff was aware of that fact when she inspected the house.

On November 2, 1954, plaintiff signed an earnest money contract and gave Lee a cashier's check for $3,000 as a downpayment. Lee and plaintiff then went to the Domning home to complete the purchase. Plaintiff remained in the automobile while Lee went into the Domning home. The Domnings accepted the offer and signed the contract, whereupon the $3,000 check was turned over to them, and they still retain that amount. Plaintiff claims that when she signed the contract it was in blank aside from the printed portions thereof. Lee claims that it was complete in all details. Plaintiff claims that, subsequent to the signing of this instrument, she went to an attorney, Glenn G. Nybeck, to have the title examined and that he then advised her not to sign the contract for deed which had been prepared because the transaction was "a shady deal." She claims that during the latter part of November she discovered that the represen-

tations of Lee were false, and she thereafter commenced this action to recover the $3,000 which had been delivered by Lee to the Domnings. The jury returned a verdict in favor of all defendants, and this appeal followed.

The questions presented for our determination are: (1) Whether the court erred in instructing the jury as to the essential elements of a right to recover in an action based upon a fraudulent representation; (2) whether the fraudulent representations of Lee are imputable to defendants Leonard and Ruth Domning when they retained the payment obtained as the result of such representations; (3) whether the court erred in permitting defendants to call attorney Nybeck to rebut the statements plaintiff testified he had made; (4) whether the court erred in admitting evidence showing a close personal relationship between Lee and plaintiff; and (5) whether the court erred in permitting evidence showing that plaintiff had changed attorneys after discovery of the fraud.

■ The rule we follow in this state in establishing a fraudulent representation is stated in 8 Dunnell, Dig. (3 ed.) § 3818, as follows:

"A person is liable for fraud if he makes a false representation of a past or existing material fact susceptible of knowledge, knowing it to be false, or as of his own knowledge without knowing whether it is true or false, with intention to induce the person to whom it is made to act in reliance upon it, or under such circumstances that such person is justified in acting in reliance upon it, and such person is thereby deceived and induced to act in reliance upon it, to his pecuniary damage."[1]

■ An unqualified affirmation amounts to an affirmation of one's own knowledge.[2]

----

[1]See, also, Helvetia Copper Co. v. Hart-Parr Co. 137 Minn. 321, 163 N. W. 665; Osborn v. Will, 183 Minn. 205, 236 N. W. 197; Moulton v. Norton, 184 Minn. 343, 238 N. W. 686; Gaetke v. The Ebarr Co. Inc. 195 Minn. 393, 263 N. W. 448; Spiess v. Brandt, 230 Minn. 246, 41 N. W. (2d) 561, 27 A. L. R. (2d) 1; Dwinnell v. Oftedahl, 235 Minn. 383, 51 N. W. (2d) 93; Restatement, Restitution, § 28.

[2]Jacobson v. Chicago, M. & St. P. Ry. Co. 132 Minn. 181, 156 N. W. 251, L. R. A. 1916D, 144, Ann. Cas. 1918A, 355; Schlechter v. Felton, 134 Minn. 143, 158 N. W. 813, L. R. A. 1917D, 556.

■ It is immaterial whether a statement made as of one's own knowledge is made innocently or knowingly. An intent to deceive no longer is necessary.[3] Nor is it necessary to prove that defendants knew the representations were false.[4]

■ Fraudulent intent may be proved by showing that the party knew his statements to be false; or that, having no knowledge of their truth or falsity, he did not believe them to be true; or that, having no knowledge of their truth or falsity, he yet represented them to be true of his own knowledge.[5]

The instruction given to the jury by the trial court on this issue was:

"To recover against the agent, the plaintiff must prove by an overweight of the evidence, * * * each one of the following five essentials:

*   *   *   *   *

"(2) That Lee knew such representation to be false, or made it without belief in its truth, or recklessly, careless whether it be true or false."

Defendants claim that the last sentence of this instruction embodies the rule of law that, even though innocently made, a representation is actionable if it is false in fact. We do not think so. It is not necessary that the statement be recklessly or carelessly made. It makes no difference how it is made if it is made as an affirmation of which defendant has knowledge and it is in fact untrue. The right of recovery in a case of this kind is based on the fact that such statement, being untrue in fact, relied upon by the other party in entering into the transaction, has resulted in the loss to him which he should not be required to bear.[6]

■ At the close of the evidence plaintiff requested that the court instruct the jury:

"* * * that if the jury should find that such fraud was practiced,

---

[3]Jacobson v. Chicago, M. & St. P. Ry. Co. 132 Minn. 181, 156 N. W. 251, L. R. A. 1916D, 144, Ann. Cas. 1918A, 355; Osborn v. Will, 183 Minn. 205, 236 N. W. 197.

[4]Helvetia Copper Co. v. Hart-Parr Co. 137 Minn. 321, 163 N. W. 665.

[5]8 Dunnell, Dig. (3 ed.) § 3819.

[6]5 Williston, Contracts (Rev. ed.) § 1500.

that then the defendants Domning are legally liable for such fraud and in that event the plaintiff will be entitled to recover the $3,000 which she so paid."

The court gave the following instruction instead of the one requested:

"\* \* \* An owner may be liable for loss caused to a buyer by the latter's reliance upon a fraudulent representation of an agent, *if the representation be within the power of the agent to make for the owner* even though the owner did not authorize, participate in, or ratify it. A mere grant of power by an owner to an agent to sell does not include a power to make fraudulent representations, for it must be established that the buyer reasonably believed that the agent was authorized by the owner to make them and has no notice that the agent was not so authorized. It is commonly known that the function of an agent is not only to procure a buyer, but also to make some representations about the property. All parties to this controversy knew or should have known that there might be some exaggerated or empty expression of praise sometimes called 'sales talk' or 'puffing one's wares,' and that, if reasonable, considering the circumstances and people involved, it was permissible. You, and only you, must decide from all of the evidence whether or not the plaintiff reasonably believed that the agent was authorized by the owner to make the claimed misrepresentation." (Italics supplied.)

There is no dispute that the Domnings received and still retain the downpayment of $3,000. Under these circumstances, if liability were established against Lee, the Domnings would be liable as a matter of law, and the requested instruction, or one similar in substance, should have been given. Where, after learning of the fraud, a principal retains the benefits of a transaction consummated for him by an agent as the result of a fraudulent representation, he takes the benefits subject to the taints under which they were obtained. The principal may not retain the benefits of a transaction obtained by a fraudulent representation and at the same time escape liability for the fraud by which the benefits were obtained. The rule is stated in 1 Dunnell, Dig. (3 ed.) § 184, as follows:

"\* \* \* When a principal retains the benefits of a contract obtained

for him by his agent, he cannot repudiate the acts of the agent which induced the other party to the contract to enter into it on the ground that such acts were unauthorized. By accepting the contract he takes it with whatever taint attached to its origin, and by retaining the fruits of the unauthorized acts he assumes the same responsibility therefor as though they had been done with his authority. *One who accepts a sale of property negotiated through the medium of another is bound by the representations made to accomplish the sale."* (Italics supplied.)

In Albitz v. Minneapolis & P. Ry. Co. 40 Minn. 476, 479, 42 N. W. 394, 395, we said:

"The defendant is not in position to deny the authority of its agent to make the representations. It cannot retain the benefits of the transaction, and repudiate the remainder. If it accepted and retained the contract, it must take it with whatever taint attached to its origin."

This statement has been cited frequently and has been followed since the decision in that case.[7]

If the Domnings, upon learning of the fraud of their agent, wished to be relieved of liability, they should have returned or tendered back the benefits of the transaction. When they chose to retain the benefits, they became liable the same as if they had authorized the acts of Lee by which the transaction was consummated.

Defendants contend that, even if the court erred with respect to the instruction relating to the liability of the Domnings, this question now has become moot because the jury must have found that Lee did not make fraudulent representations which were actionable. That would be true if the liability of Lee had been properly submitted to the jury, but, in view of the fact that there must be a new trial because of the error in the court's instructions with respect to the liability of Lee, the question has been determined here for the proper guidance of the court in a new trial.

---

[7]Freeman v. F. P. Harbaugh Co. 114 Minn. 283, 130 N. W. 1110; Knappen v. Freeman, 47 Minn. 491, 50 N. W. 533; Roseberry v. Hart-Parr Co. 145 Minn. 142, 176 N. W. 175; Atherton v. Barber, 112 Minn. 523, 128 N. W. 827; Luebke v. J. I. Case Threshing Machine Co. 178 Minn. 40, 226 N. W. 415.

■ Plaintiff contends also that the court erred in permitting defendants to call and examine attorney Nybeck over the objection of plaintiff that such testimony was privileged. On cross-examination of plaintiff, she volunteered the statement that Nybeck had advised her not to sign a contract for deed covering the property and had stated that "it is a shady deal." Defendants thereafter called attorney Nybeck, who, over the objection of plaintiff that his testimony was privileged, was permitted to deny that he had made such statement. The court held that plaintiff, by volunteering the statement above, had waived her privilege. The ruling was correct.

The attorney-client privilege is personal to the client and may be waived.[8] Where the client voluntarily testifies to statements alleged to have been made to an attorney or statements made by the attorney to the client, it must be held that the client has waived the privilege as to the things testified to by the client and cannot prevent the adverse party from calling the attorney as a witness to rebut or complete the conversation on that matter. The rule is stated in Steen v. First Nat. Bank (8 Cir.) 298 F. 36, 41, as follows:

"The owner of the privilege of preventing the disclosure of confidential communications cannot, after testifying to or about them, or to or about any substantial part of them, without claiming his privilege, or objecting to testify on the ground of his privilege, invoke that privilege to prevent other parties to the communications from testifying to them. He cannot by his silence lay down the shield of his privilege, and assail another with the sword of his own testimony to the privileged communications, and, when his adversary essays to defend himself, or to attack him by his version of the testimony, or by the testimony of other parties or witnesses to such communications, again seize the shield of his privilege and shut out all testimony as to the confidential communications but his own. He has waived his privilege and 'such waiver is in no sense contrary to public policy; indeed, it is in the interest of truth and justice.' "[9]

---

[8] Wigmore, Evidence (3 ed.) § 2323; State v. Tall, 43 Minn. 273, 45 N. W. 449.

[9] See, also, McCormick, Evidence, § 97; 8 Wigmore, Evidence (3 ed.) § 2327(4).

■ Defendants contend that, even if the court's charge was erroneous, it was not prejudicial because plaintiff is estopped to assert the alleged fraud by waiver. It is defendants' contention that plaintiff, by her acts of dominion over the property after the discovery of the fraud, has waived such fraud.

Waiver and estoppel are affirmative defenses which must be pleaded.[10] Such defenses were not pleaded by defendants, nor were they submitted to the jury. They cannot be considered by this court on appeal for the first time.

■ Defendants also claim that there should be an affirmance because the verdict is right as a matter of law in that the evidence conclusively fails to establish any fraud. The jury could find that Lee stated positively to plaintiff that, when some minor repairs had been made on the house, it, together with two acres of land, could be sold for $17,000 and that he had a buyer who would pay that amount. This was a positive affirmation which the jury could find was untrue. The jury also could have found that Lee stated that he had a crew of men ready to go to work on the house in order that it could be placed in such condition that it could be sold promptly and could further have found that he had no intention of going through with this promise at the time he made it. There are other representations that are positive in nature. Such, for instance, is the alleged statement of Lee that the house was complete with a toilet and plumbing, which was not a fact. Even if some of the statements relied upon by plaintiff could be construed as "sales talk" or "puffing," there still is evidence of representations that go beyond permissible sales talk which, if believed by the jury, is enough to constitute a basis for recovery. Under these circumstances, we cannot say as a matter of law that all the alleged representations, even if proved, were not actionable. Consequently, there was a question for the jury's determination.

We have examined the other assignments of error, but, in view of

---

[10]Rule 8.03 of Rules of Civil Procedure.

the decision above, it is unnecessary to pass upon them at this time.

In view of the error in the court's instructions with respect to the essential elements of a fraudulent representation, there must be a new trial.

Reversed.