## CREDIT, INC. v. ERNEST R. KUTZIK.

159 N. W. (2d) 277.

May 17, 1968—No. 40,518.

*Larkin, Hoffman, Daly, Lindgren & Danielson, James P. Larkin,* and *Allan E. Mulligan,* for appellant.

*Ray Flader,* for respondent.

Heard before Knutson, C. J., and Murphy, Rogosheske, Sheran, and Peterson, JJ.

ROGOSHESKE, JUSTICE.

In the summer of 1960, William Reeves obtained an option from Clarence and Gladys Burns to purchase certain property in Chippewa County. Reeves and another party, Robert Jeffery, planned to develop a project on this property to be known as the Chippewa Motor Hotel. In 1961, Reeves and Mrs. Jeffery (Mr. Jeffery had died) obtained the legal services of defendant, Ernest Kutzik, to aid in the development of the project. The two agreed that each would pay one-half of defendant's attorney's fees. Between March and October, defendant worked extensively on the project, spending nearly 500 hours. In October, after the project had been abandoned due to an inability to obtain financing, defendant presented his bill of $6,500. A month later, Reeves converted the option to buy into a contract for deed. By May 1962, Mrs. Jeffery had paid $3,250, her half of the bill, but Reeves had not paid his $3,250. Therefore, on May 18, 1962, as authorized by Minn. St. 481.13, Kutzik filed an attorney's lien against the property for the $3,250 owed by Reeves.

In 1964, Reeves became delinquent in payments on the contract for deed, and Burns authorized his attorney to institute cancellation proceedings pursuant to Minn. St. 559.21. Notice of cancellation was served on June 8, 1964, and thereafter an affidavit of failure to comply with the terms of the notice was filed. Following this, the Burnses accepted Reeves' tender of the April 1964 payment on the contract, and on

July 28, 1964, they also accepted his payment of the amount due for real estate taxes on the property. Whereupon, on July 28, Burnses' attorney sent Reeves a letter which stated that if by August 20, 1964, he would pay the balance due under the contract plus some incidental costs incurred by Burns, the Burnses would deliver to him a warranty deed to the property. The total amount was about $7,500, less than half the original price and well under the market value of the property. Reeves then contacted plaintiff, Credit, Inc., and made arrangements whereby plaintiff would take title to the property and Reeves would obtain a $270,000 construction contract. On August 20, 1964, Reeves and Donald Julen, an officer of plaintiff, went to Montevideo and met with Burns. At the meeting, Reeves delivered a quitclaim deed to Mr. Burns, and the Burnses in turn delivered a warranty deed to plaintiff and received a check for $7,503.

Reeves, in accordance with his agreement with plaintiff and at his own expense, brought this action under the name of plaintiff to expunge the attorney's lien, and defendant has counterclaimed for the foreclosure of the lien. The trial court held that the notice of cancellation and the affidavit of failure to comply terminated any interest Reeves had in the property and that neither Reeves nor the Burnses had done anything subsequently which operated to give Reeves any legal or equitable interest in the property, and it therefore ordered the lien expunged from the record.

The issues before this court are: (1) Does the evidence as a matter of law establish a waiver of the forfeiture resulting from the cancellation proceedings? (2) If so, does the evidence compel a finding that Reeves asserted the waiver of the forfeiture so as to reestablish an interest in the property?

We hold that the evidence does compel the finding that the Burnses waived the forfeiture. The acceptance and retention by the Burnses of the April payment on the contract and the payment of the property taxes after the cancellation proceedings were completed was inconsistent with an intention to treat the contract for deed as terminated by default. It is consistent only with a purpose to regard the contract as still existing and an intentional waiver of the forfeiture. Odegaard v. Moe,

264 Minn. 324, 119 N. W. (2d) 281; Jandric v. Skahen, 235 Minn. 256, 50 N. W. (2d) 625. Furthermore, the letter containing the offer to Reeves to "re-purchase" the property for the balance due under the contract plus costs and the testimony of Mr. Burns refute any finding other than an intent to waive the forfeiture resulting from the cancellation proceeding. Mr. Burns testified:

"A.    After I had taken it back—as far as I was concerned I had taken the land back. Then he sent the money, and my wife is a little softer than I am, and she says, 'This man can raise the money. We're not going to take the land away from him.' See? So when he sent this money—maybe this is the letter that it pertains to—we took the money as a down payment on a new deal. And if he would pay me at a certain date I would give him the land back for the original cost, whatever it was. I just don't remember.

"Q.    When you say cost you mean what?

"A.    Whatever was the balance of this contract."

As defendant correctly argues, such conduct effectively waived the Burnses' right to enforce the default and clearly would have prevented them from ousting Reeves from possession of the property or regarding his rights under the contract as terminated.

However, the fact that a vendor has waived the forfeiture does not in itself restore an interest in the property to the vendee. A waiver is only an affirmative defense which must be asserted to become operative in restoring the forfeited rights. Swanson v. Domning, 251 Minn. 110, 86 N. W. (2d) 716. For the attorney's lien to be presently valid, it is necessary to find that Reeves restored his interest in the property by asserting his reinstated rights under the contract resulting from the waiver of the forfeiture. We hold that such an assertion of his rights was made by Reeves. Despite the form, the substance of the transaction resulting in transfer of title to plaintiff was an assertion by Reeves of his rights. The assertion was manifested by his successful efforts to have plaintiff supply the funds needed to act upon the Burnses' waiver within the time specified by the letter, and by the agreement entered into by Reeves and plaintiff whereby plaintiff undertook to exercise Reeves'

276

right to acquire title to the property for $7,500, in return for which Reeves would receive a $270,000 construction contract if he would remove the attorney's lien and give a quitclaim deed to the Burnses, contemporaneously with the latter's transfer of title to plaintiff.

It necessarily follows that an attorney's lien againt the property involved in the proceedings for which he rendered services is restored along with his client's reinstated interest in the property. To do otherwise would put the vendee in a better position than he would be in had he never defaulted, and in the present case, the vendee, Reeves, should not be permitted to benefit by the vendor's generosity at his attorney's expense.

The court made no finding with respect to the reasonable value of the attorney's fees or plaintiff's claim that payment was effected by Mrs. Jeffery's settlement of her share of the fees—issues toward which the bulk of the testimony was directed. Although we could assume that these issues are not disputed on this appeal since plaintiff made no appearance and filed no brief in this court, our examination of the record indicates that no purpose would be served to remand for findings on these issues. They were fully litigated, and the evidence appears conclusive that Reeves accepted the fee charged as reasonable for the services rendered, and there is no evidentiary support by which the amount claimed could be reduced or payment found.

Reversed.