*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1819**

Jeffrey Beckman, et al.,
Appellants,

vs.

Wells Fargo Bank, N.A., et al.,
Respondents,

Robert A. Tenold, et al.,
Respondents,

Green Line Home Services, LLC, et al., Defendants.

**Filed October 3, 2016
Affirmed
Smith, Tracy M., Judge**

Isanti County District Court
File No. 30-CV-13-444

Henry M. Ongeri, Steven E. Antolak, Antolak & Ongeri, Minneapolis, Minnesota (for appellants)

Ellen B. Silverman, Ashley M. Brettingen, Hinshaw & Culbertson LLP, Minneapolis, Minnesota (for respondents Wells Fargo Bank, N.A., and U.S. Bank National Association)

Natalie R. Walz, David J. McGee, Chestnut Cambronne PA, Minneapolis, Minnesota (for respondents Robert A. Tenold and Realty Executives Advantage)

        Considered and decided by Rodenberg, Presiding Judge; Larkin, Judge; and

Smith, Tracy M., Judge.

UNPUBLISHED OPINION

**SMITH, TRACY M.**, Judge

Appellants Jeffrey and Tracey Beckman argue that the district court erred when it granted summary judgment to respondents Wells Fargo, U.S. Bank, Robert Tenold, and Realty Executives Advantage (the respondents) because the district court failed to distinguish between fraudulent and negligent misrepresentation and because there are genuine issues of material fact on their fraudulent-misrepresentation claims. Because the Beckmans failed to raise a negligent-misrepresentation claim at the district court and because they have failed to demonstrate a genuine issue of material fact on their fraudulent-misrepresentation claims, we affirm.

## FACTS

In 2010, Wells Fargo held the mortgage and note on the parcel located at 32851 Xenon Drive NW in Princeton, Minnesota (the property) and foreclosed on the property after its mortgagor defaulted. Wells Fargo purchased the property at a sheriff's sale and later retained Tenold and Realty Executives to sell the property.

In October 2011, Wells Fargo had the home appraised. The appraiser determined that the property required approximately $22,000 in repairs and that its "as is" estimated market value was $385,000. The appraisal also states that the property "has approximately 900 feet of lake frontage on Green Lake, located across the road from the [property]."

Wells Fargo's "record notes" state that the property required "some repairs and updates," including replacing the carpet throughout the home, repairing drywall damage,

removing all wallpaper, and repainting the entire interior. Tenold opined that the property had "potential but boy what a mess." Wells Fargo recommended over $75,000 in repairs because there were "really no short cuts that [could] be made on this property to try and cheapen up the repairs."

Wells Fargo hired Monahan Painting and Decorating in January 2012 to complete the recommended repairs. Monahan then hired Green Line Home Services, LLC, to perform the repair work on the property. In February 2012, Monahan reported that the repairs were complete. Several days later, Tenold stated that the repairs had been completed and the property looked "good."

After the repairs were completed, the property was listed for sale "as is" on the MLS for $369,900 with an undefined amount of "lake front, lake view." Tenold was listed as the listing agent for the property. The property's price was later reduced to $329,900 and the listing's "public remarks" were updated to include 1,500 feet of lakeshore located across the road. The property's price was reduced again to $319,900 and the remarks about the amount of lakeshore remained the same.

While living in Ohio, appellants Jeffrey and Tracey Beckman were searching for a home in Minnesota and saw the property listed on the MLS and other companies' websites. Jeffrey Beckman also claims to have seen the listing on Realty Executives' website. Consistent with the MLS listing, the other advertisements stated that the property has 1,500 of lakeshore across the road.

The Beckmans retained Debra Flam of Edina Realty as their buyer's agent. Flam and Tracey Beckman visited the property in April 2012 without Jeffrey Beckman. When

Tracey Beckman and Flam arrived at the property, the home was locked and the windows were closed. Flam and Tracey Beckman's visit lasted for 20 to 30 minutes, and they walked through the entire home; Tracey Beckman did not notice any bad odor or see any mold, and the property looked "acceptable."

The Beckmans later visited the property together with Flam. The visit lasted approximately 45 minutes and the Beckmans did not notice any unusual smells or other problems other than potential cosmetic changes. During the visit, Jeffrey Beckman "challenged" Flam about the amount of lakeshore on the property because his observations led him to believe that there was far less than the advertised 1,500 feet. Flam told the Beckmans that she would have to ask Tenold about the lakeshore to confirm the actual amount.

Flam followed up with Tenold, and Tenold forwarded Flam a link to Isanti County's website, which Flam forwarded to the Beckmans. Jeffrey Beckman followed the link to a page with a parcel map of the property that showed the property as having 900 feet of lakeshore. Jeffrey Beckman asked Flam about the discrepancy between the MLS listing and the map, and Flam again followed up with Tenold. Tenold told Flam that the property has 900 feet of lakeshore and 600 more feet of shoreline on a flowage, for a total of 1,500 of "waterfront." The Beckmans did not have the property surveyed.

The Beckmans decided to make an offer on the property and, after some negotiation on the price, agreed to purchase the property for $285,000. E-mails between Flam and Tenold, as well as several addenda to the purchase agreement, state that the property was being sold "as is." Jeffrey Beckman read at least one of the "as is"

4

disclaimers and understood that the Beckmans were "taking a certain amount of risk." The Beckmans initialed the "as is" disclaimer in the purchase agreement and signed the purchase agreement.

The property's sale was contingent on a buyer's inspection, and the purchase agreement provided that the Beckmans had four business days to obtain an inspection but could not perform "intrusive" testing or inspections. The Beckmans elected to purchase the property without an inspection because they thought an inspection was unnecessary given their own visual inspections of the property and the prohibition against "intrusive" inspections. The purchase agreement also provided that the Beckmans were entitled to a final walk-through of the property to ensure that the property was in "substantially the same condition as of the date of [the] purchase agreement," but the Beckmans did not request a walk-through before closing.

The Beckmans closed on the property on June 27, 2012. Before closing, Wells Fargo had transferred the property to U.S. Bank, and U.S. Bank became the listed seller. After closing, the Beckmans returned to Ohio to finish packing.

In late July 2012, the Beckmans returned to the property for the first time since closing. The Beckmans claim that they smelled a foul odor as soon as they opened the door. According to the Beckmans, they also discovered a number of issues on the property, including garbage, mold, urine- and water-stained walls and carpet pads, dead animals and dog hair underneath new appliances, water damage, rusty tack strips under the carpet, and fire damage. Except for the odor and garbage, most of the other problems

5

were not discovered until the Beckmans began pulling up carpet, removing appliances, and opening walls.

The Beckmans also claim that a neighbor, who had purchased his property in April 2012, told them that he and his wife own approximately half of the Beckmans' 900 feet of lakeshore. The Beckmans further allege that, according to the neighbor, both parcels were previously owned by the same individual who divided the lakeshore between the properties and that the neighbor learned this information during a conversation with his property's previous owner. The Beckmans claim that they went to the county offices to determine who owns the lakeshore, and the county confirmed that the parcels' legal descriptions show that the Beckmans own less than 900 feet of lakeshore. The Beckmans acknowledge that county records contain no document effecting the lakeshore division.

The Beckmans sued for (1) breach of contract against Wells Fargo and U.S. Bank regarding the lakeshore discrepancy; (2) fraud against Wells Fargo, U.S. Bank, Tenold, and Realty Executives regarding the lakeshore discrepancy; (3) unilateral mistake against Wells Fargo, U.S. Bank, Tenold, and Realty Executives regarding the lakeshore discrepancy; (4) fraud against Wells Fargo, U.S. Bank, Tenold, Realty Executives, and Green Line regarding the property's condition; (5) statutory consumer fraud against Wells Fargo, U.S. Bank, Tenold, Realty Executives, and Green Line regarding the property's condition; (6) breach of contract against Flam and Edina Realty regarding the lakeshore discrepancy; and (7) breach of contract against Flam and Edina Realty regarding the property's condition.

Flam and Edina Realty moved for summary judgment, arguing that their contract with the Beckmans contained a mandatory arbitration clause and that they were not liable for fraud because they were entitled to rely on information provided about the property and did not know of the alleged problems with the property. The district court partially granted Flam and Edina Realty's motion so that the parties could arbitrate the dispute.

Later, Wells Fargo, U.S. Bank, Tenold, Realty Executives, and Green Line moved for summary judgment on all claims. The district court granted summary judgment to Flam, Edina Realty, Tenold, Realty Executives, and Green Line on all claims. Wells Fargo and U.S. Bank moved to clarify the district court's order because the district court did not address their motion for summary judgment. The district court issued an order clarifying that Wells Fargo and U.S. Bank's motion for summary judgment was denied. Wells Fargo and U.S. Bank moved the district court to reconsider the denial of summary judgment, and the district court granted the motion to reconsider. On reconsideration, the district court granted Wells Fargo and U.S. Bank's motion for summary judgment on all claims and entered judgment.

The Beckmans attempted to appeal from the entry of judgment for Wells Fargo and U.S. Bank, but we questioned whether that judgment was appealable because the district court had not entered judgment for Tenold, Realty Executives, Flam, Edina Realty, and Green Line when it granted their earlier motions for summary judgment. This court dismissed the appeal as premature because it was a partial judgment and the order did not contain the express determination that there is no just reason for delay. On September 21, 2015, the district court entered judgment for the remaining parties.

The Beckmans appeal.

## D E C I S I O N

A motion for summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. We review summary judgment de novo to determine if the district court properly applied the law and if genuine issues of material fact remain. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). No genuine issue of material fact exists "when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997). We "view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). But summary judgment for the defendant is mandatory when "the record reflects a complete lack of proof on an essential element of the plaintiff's claim." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995).

## I.

The Beckmans contend that the district court erred as a matter of law because it failed to distinguish between liability for fraudulent misrepresentation and negligent misrepresentation. A claim for negligent misrepresentation requires the plaintiff to

8

establish "(1) a duty of care owed by the defendant to the plaintiff; (2) the defendant supplies false information to the plaintiff; (3) justifiable reliance upon the information by the plaintiff; and (4) failure by the defendant to exercise reasonable care in communicating the information." *Williams v. Smith*, 820 N.W.2d 807, 815 (Minn. 2012). The Beckmans argue that summary judgment was inappropriate because genuine issues of material fact remain regarding whether Tenold, Wells Fargo, and U.S. Bank owed the Beckmans a duty of care and whether those parties failed to exercise reasonable care in providing information about the property.

The respondents contend that the Beckmans did not present negligent misrepresentation as a theory of relief to the district court, meaning that we should not consider it. The Beckmans argue that we should consider their negligent-misrepresentation argument because they "substantially raised" the claim in their complaint. Alternatively, the Beckmans contend that we should consider their negligent-misrepresentation argument under an exception to *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988), and in the "interests of justice."

In general, we will review "only those issues that the record shows were presented and considered by the [district] court." *Thiele*, 425 N.W.2d at 582 (quotation omitted). Contrary to the Beckmans' assertion, they did not "substantially raise[]" the negligent-misrepresentation claim in their complaint. While similar in some respects, negligent misrepresentation and fraudulent misrepresentation have different elements. *Compare Williams*, 820 N.W.2d at 815 (articulating elements of a negligent-misrepresentation claim), *with Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn.

9

2007) (stating the elements of fraudulent misrepresentation). Not only is the Beckmans' complaint devoid of any mention of negligent misrepresentation and any allegation that Tenold, Wells Fargo, or U.S. Bank owed the Beckmans a duty of care and that those parties failed to exercise reasonable care—both of which are elements of negligent misrepresentation, *Williams*, 820 N.W.2d at 815—but the Beckmans also did not raise the negligent-misrepresentation argument in their memoranda opposing summary judgment.

Nor is this an appropriate situation in which to apply the exception to *Thiele*. Under that exception, we may consider an issue not raised at the district court level if the issue "is plainly decisive of the entire controversy on its merits, and where . . . there is no possible advantage or disadvantage to either party in not having had a prior ruling by the [district] court on the question." *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 403 (Minn. 2000) (quotation omitted). Allowing the Beckmans to add another claim to their appeal is not "plainly decisive of the entire controversy," and there would be a substantial disadvantage to the respondents if we considered a new theory of relief on appeal that the respondents did not have an opportunity to conduct discovery on or brief at the district court. *See id.*

While the Beckmans observe that this court may consider matters "as the interest of justice may require," Minn. R. Civ. App. P. 103.04, in our view it would be contrary to the interest of justice to allow the Beckmans to assert a negligent-misrepresentation claim for the first time on appeal, and we therefore do not consider it.

10

**II.**

The Beckmans argue that the district court erred when it granted summary judgment to the respondents on the Beckmans' fraudulent-misrepresentation claims. The Beckmans contend that there is a triable issue because Tenold was the banks' agent and Wells Fargo and U.S. Bank are liable as principals for Tenold's misrepresentations. We therefore examine whether genuine issues of material fact remain regarding Tenold's alleged fraudulent misrepresentations.

A prima facie case of fraudulent misrepresentation requires the plaintiff to establish that

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the other party suffered pecuniary damage as a result of the reliance.

*Hoyt Props., Inc.*, 736 N.W.2d at 318 (quotation omitted). "A misrepresentation may be made either (1) by an affirmative statement that is itself false or (2) by concealing or not disclosing certain facts that render the facts that are disclosed misleading." *M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn. 1992). Fraud claims must be pled "with particularity." Minn. R. Civ. P. 9.02.

In general, a principal is liable for the acts of its agent "committed in the course of and within the scope of the agency." *Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 535 (Minn. 1992). Specifically, a principal may be liable for the fraudulent

11

misrepresentations of its agent that induce a buyer to purchase real property. *Swanson v. Domning*, 251 Minn. 110, 116-17, 86 N.W.2d 716, 721-22 (1957).

## A.     Amount of Lakeshore

The Beckmans argue that the district court erred when it granted summary judgment on their lakeshore fraud claim because Tenold fraudulently misrepresented that the property includes 900 feet of lakeshore. The district court concluded that the undisputed facts establish that Tenold and Realty Executives' lakeshore representations were not fraudulent or tortious.

### 1. *False representation*

The Beckmans contend that Tenold's statement that the property has 900 feet of lakeshore is false because they later learned that their neighbors own approximately half of the 900 feet. Wells Fargo and U.S. Bank contend that the Beckmans have failed to demonstrate a triable issue on falsity because their assertion is based on inadmissible evidence.

"In order to successfully oppose a motion for summary judgment, appellant must extract *specific*, *admissible* facts from the voluminous record and particularize them for the trial judge." *Kletschka v. Abbott-Nw. Hosp., Inc.*, 417 N.W.2d 752, 754 (Minn. App. 1988) (second emphasis added), *review denied* (Minn. Mar. 30, 1988). Evidence offered to withstand summary judgment must be based on personal knowledge, must be admissible at trial, and must demonstrate competence to testify on the subject matter. Minn. R. Civ. P. 56.05. Absent an applicable exception, hearsay is inadmissible. Minn. R. Evid. 802. Hearsay is an out-of-court statement offered to prove the truth of the

12

matter asserted. Minn. R. Evid. 801(c). Testimony by a lay witness is limited to opinions or inferences "rationally based on the perception of the witness" and "helpful to . . . the determination of a fact in issue." Minn. R. Evid. 701.

The evidence submitted by the Beckmans on the issue of falsity consists of (1) the neighbor's statement that he and his wife own half of the property's lakeshore based on a conversation with the previous owner of their property, (2) a statement by an unidentified county worker that the neighbors own approximately 450 feet of the lakeshore the Beckmans believed they had purchased, (3) Jeffrey Beckman's interpretation of the property's legal description, and (4) a surveyor's affidavit stating that the property has less than 900 feet of lakeshore based on his examination of the certificate of survey and the property's legal description.

The first two pieces of evidence are inadmissible hearsay for the purpose of establishing falsity; in fact, the first piece of evidence is hearsay within hearsay because it depends on the neighbor's statement and on what his parcel's previous owner allegedly said. Minn. R. Evid. 802, 805. And Jeffrey Beckman is not competent to testify about the property's metes and bounds legal description. *See* Minn. R. Evid. 701, 702 (describing lay and expert witness testimony); *see also* Minn. R. Civ. P. 56.05. But the surveyor is likely competent to testify about the property's legal description and the certificate of survey, and his affidavit creates a genuine issue of material fact on the issue of falsity. *See DLH, Inc.*, 566 N.W.2d at 69 (stating that a genuine issue of material fact exists when "reasonable persons might draw different conclusions from the evidence presented").

13

## 2. *Fraudulent intent*

Although the Beckmans have demonstrated a genuine issue of material fact on falsity, we conclude that they have failed to demonstrate a genuine issue of material fact on Tenold's fraudulent intent.

"Fraudulent intent is, in essence, dishonesty or bad faith.  What the misrepresenter knows or believes is the key to proof of intent."  *Florenzano v. Olson*, 387 N.W.2d 168, 173 (Minn. 1986).

> There is no doubt of fraudulent intent when the misrepresenter knows or believes the matter is not as he or she represents it to be.  Fraudulent intent is also present when a misrepresenter speaks positively and without qualification, but either is conscious of ignorance of the truth, or realizes that the information on which he or she relies is not adequate or dependable enough to support such a positive, unqualified assertion.

*Id.*

When faced with summary judgment, a plaintiff alleging fraud must produce particular evidence of all facts for which it bears the burden of proof.  *Goward v. City of Minneapolis*, 456 N.W.2d 460, 464 (Minn. App. 1990).  To withstand summary judgment on the fraudulent intent element, the Beckmans needed to put forth particular evidence that (1) Tenold knew that the property has less than 900 feet of lakeshore, or (2) Tenold represented that the property has 900 feet of lakeshore without a basis for that representation or based on information that he knew to be inadequate or unreliable.  *See Florenzano*, 387 N.W.2d at 173; *see also Hoyt Props., Inc.*, 736 N.W.2d at 320.

14

The Beckmans allege that Tenold knew that the property has less than 900 feet of lakeshore because he was the listing agent for the Beckmans' property and the neighbors' property, and the legal descriptions of those properties should have put Tenold on notice that the Beckmans' property does not have 900 feet of lakeshore. That Tenold allegedly sold both parcels is not particular evidence of Tenold's actual knowledge of the alleged lakeshore discrepancy. Similarly, that the parcels' legal descriptions apparently show that the property has less than 900 feet of property is not particular evidence of Tenold's knowledge because the Beckmans have not demonstrated that Tenold knew what the legal descriptions mean.

Additionally, there is no particular evidence in the record that Tenold represented that the property has 900 feet of lakeshore without a basis for that representation or that he had reason to doubt the accuracy of the information he relied on. The basis for Tenold's alleged misrepresentation was the map he obtained from Isanti County's website, which depicts the property as having 900 feet of lakeshore. Tenold shared that basis with Flam who then shared it with the Beckmans. Jeffrey Beckman acknowledged that there is no evidence that Tenold should have doubted that information's validity. Rather, the record evidence indicates that the property was understood to have 900 feet of lakeshore: The Beckmans stated that they pay taxes on 900 feet of lakeshore, as did the property's previous owners, and the appraisal that Wells Fargo obtained on the property in October 2011 states that the property "has approximately 900 feet of lake frontage." Moreover, Jeffrey Beckman stated that the neighbors' property was not marketed as

15

having lakeshore. We discern no genuine issue of material of fact under either formulation of fraudulent intent. *See Florenzano*, 387 N.W.2d at 173.

The Beckmans further argue that summary judgment was inappropriate on their lakeshore fraud claim because genuine issues of material fact remain regarding whether they knew or should have known that the property does not have 1,500 feet of lakeshore and whether Flam or Tenold misrepresented the amount of lakeshore by advertisement. While these facts may be in dispute, their resolution is not "material" to Tenold's fraudulent intent—the dispositive issue here. *See Zappa v. Fahey*, 310 Minn. 555, 556, 245 N.W.2d 258, 259-60 (1976) (stating that a fact is material if its resolution would affect the result or outcome of the case).

Viewing the evidence in the light most favorable to the Beckmans, we conclude that there is no genuine issue of material fact that Tenold acted with fraudulent intent. *See Fabio*, 504 N.W.2d at 761. The district court did not err when it granted summary judgment to the respondents on the Beckmans' lakeshore fraud claim. *See Lubbers*, 539 N.W.2d at 401.

**B.      Condition of the Property**

The Beckmans also allege that the district court erred when it granted summary judgment on their fraud claim regarding the property's condition. As with their lakeshore-fraud claim, the Beckmans' theory of liability relies on agency principles. The district court concluded that the "as is" disclaimers barred the Beckmans' fraud claim regarding the property's condition.

16

An addendum to the purchase agreement contains an "as is" disclaimer:

> Condition of Property: The property being purchased by Buyer, including the dwelling, other improvements and fixtures, is not new and is being purchased "AS IS."

> Buyer understands that the property, as defined above, will be purchased in the condition it is in at the time of the Purchase Agreement. Buyer shall have the right to a walk-through review of the property prior to closing.

The property-condition addendum to the purchase contract contains an additional "as is" disclaimer:

> Buyer is aware that Seller acquired the property which is the subject of this transaction by way of foreclosure, and that the Seller is selling and Buyer is purchasing the property in an "AS IS" CONDITION WITHOUT REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE. . . . Buyer is not relying on Seller or its agents as to the condition of the property and/or any improvements thereon, including, but not limited to mold, roof, foundations, etc. THE PREMISES WERE ACCEPTED WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND OR NATURE AND IN AN "AS-IS" CONDITION BASED SOLELY ON BUYER'S OWN INSPECTION.

The plain language of the "as is" disclaimers is broad and is probative of the Beckmans having purchased the property without any warranties and in the condition they observed. But "[a] party who makes fraudulent representations to induce another to make a contract cannot escape liability for his fraud by incorporating a disclaimer of fraud in the contract." *Nat'l Equip. Corp. v. Volden*, 190 Minn. 596, 600, 252 N.W. 444, 445 (1934); *see also S Dev. Co. v. Pima Capital Mgmt. Co.*, 31 P.3d 123, 128-29 (Ariz. Ct. App. 2001) (reviewing caselaw stating that "as is" disclaimers do not bar tort claims and holding that "a vendor *must* disclose *latent* defects in property that are known to the

17

vendor, notwithstanding the existence of a burden-shifting 'as is' clause or disclaimer of warranties"). We therefore decline to agree with the district court that the "as is" disclaimers altogether bar the Beckmans' fraud claim if Tenold did, in fact, fraudulently misrepresent latent defects in the property's condition. Any error in the district court's conclusion does not prevent us from affirming, however, if the Beckmans have failed to demonstrate a genuine issue of material fact on any element of their fraudulent-misrepresentation claim regarding the property's condition. *See Krogness v. Best Buy Co.*, 524 N.W.2d 282, 287 (Minn. App. 1994) (stating that we may affirm summary judgment "if it can be sustained on any grounds"), *review denied* (Minn. Jan. 25, 1995).

1. *Affirmative misrepresentation*

The Beckmans argue that Tenold affirmatively misrepresented the property's condition. In their complaint, the Beckmans allege that Tenold "represented that the [property] was habitable and clean, free of vermin, and free of odors and other contamination." But the Beckmans point to no particular evidence that Tenold made these representations. The Beckmans did not depose Tenold or anybody from Realty Executives. And, in his deposition, Jeffrey Beckman acknowledged that there is no evidence that Tenold or Realty Executives made any representations, prior to closing, that the property was clean and free of vermin. Jeffrey Beckman stated that he thought that Tenold may have stated something about potential odors in the property but could not point to a specific statement on a specific date and later admitted that Tenold did not make any representations about the property. Similarly, Tracey Beckman stated in her deposition that Tenold made no representations to her about the property's condition.

18

"[M]ere averments" are insufficient to withstand summary judgment; we discern no genuine issue of material fact on this point. *See DLH, Inc.*, 566 N.W.2d at 71.

2. *Concealment allegation*

The Beckmans argue that Tenold and others conspired to fraudulently conceal the alleged problems on the property. *See Caritas Family Servs.*, 488 N.W.2d at 289 (stating that failing to disclose or concealing certain facts may be the basis for a fraud claim). A real-estate agent must "disclose to a prospective purchaser all material facts of which the [agent] is aware, which could adversely and significantly affect an ordinary purchaser's use or enjoyment of the property." Minn. Stat. § 82.68, subd. 3(a) (2014).

The Beckmans point to no particular evidence that Tenold knew of the specific alleged problems on the property or that they had not been remediated by the work done on the property. Instead, the evidence in the record points to Tenold being unaware of any alleged remaining problems. Jeffrey Beckman acknowledged in his deposition that there is no evidence that Tenold aired out the property before the Beckmans saw it, and Tracey Beckman stated in her deposition that there is no evidence that Tenold was at the property prior to either of the showings. Jeffrey Beckman further acknowledged that there is no evidence that Tenold knew of any fires on the property, that Tenold knew of any water damage, that Tenold knew of any mold, that Tenold knew that the walls had not been cleaned and sealed, that Tenold knew that urine-contaminated flooring remained on the property, or that Tenold knew that appliances and cabinets were installed over animal droppings, hair, and other filth. Rather, the record evidence shows that after Tenold saw the completed work, he thought the property looked "good." The Beckmans

19

have failed to demonstrate a genuine issue of material fact on this point. *See DLH, Inc.*, 566 N.W.2d at 71.

The Beckmans further contend summary judgment was inappropriate on the property condition fraud claim because there are genuine issues of material fact regarding Green Line's failure to perform the remodeling and regarding the Beckmans' reasonable reliance on Green Line's misrepresentations. Green Line is not a party to this appeal, and any factual disputes about Green Line's failure to perform the work it was hired to do and the reasonableness of the Beckmans' reliance on Green Line's alleged misrepresentations are immaterial to resolving the claims on appeal. *See Zappa*, 310 Minn. at 556, 245 N.W.2d at 259-60.

Viewing the evidence in the light most favorable to the Beckmans, we conclude that there is no genuine issue of material fact that Tenold misrepresented the property's condition. *See Fabio*, 504 N.W.2d at 761. The district court did not err when it granted summary judgment to the respondents on the Beckmans' fraud claim regarding the property's condition. *See Lubbers*, 539 N.W.2d at 401.

**Affirmed.**